## WILLIAM LAURIE COMPANY *v.* McCULLOUGH.

[No. 21,414. Filed February 23, 1910. Rehearing denied July 1, 1910.]

1. APPEAL.—*Briefs.*—*Waiver.*—Points not discussed are waived. p. 481.

2. TRIAL.—*Verdict.*—*Interrogatories.*—Where answers to interrogatories to the jury are in irreconcilable conflict with the general verdict on material matters, the general verdict must be disregarded. pp. 481, 482.

3. TRIAL.—*Verdict.*—*Interrogatories.*—If the answers to the interrogatories to the jury show that there is no evidence to sustain a fact essential to plaintiff's recovery, a general verdict for plaintiff cannot stand. p. 481.

4. TRIAL.—*Interrogatories.*—*Answer of "No Evidence."*—An answer of "No evidence" to an interrogatory to the jury is a finding

against the party having the burden of proof on the fact inquired about. p. 481.

5. NEGLIGENCE.—*Oiled Floors.—Interrogatories.—Answer of "No Evidence."—Conflict.*—The answer of "No evidence" to an interrogatory to the jury asking whether the defendant mercantile company, at the time the plaintiff slipped and fell in defendant's store, knew that the floor was "oily, greasy, slick, slippery and dangerous to walk upon," does not overthrow a general verdict for the plaintiff, where other answers and the evidence show that defendant placed the oil on the floor, the answer evidently intending to negative knowledge of the danger. p. 482.

6. NEGLIGENCE. — *Interrogatories. — Notice. — Actual. — Constructive.*—A finding with respect to knowledge of a defect ordinarily includes both actual and constructive. p. 482.

7. WITNESSES. — *Competency. — Waiver.—Physicians.*—Physicians are not competent witnesses as to matters learned in the course of professional duty, but the patient may waive the incompetency and permit the physician to testify. p. 483.

8. TRIAL.—*Argument to Jury.—Comment on Failure of Plaintiff to have Physician Testify.*—Counsel for defendant in their argument to the jury, have no right to comment adversely on the fact that the plaintiff failed to have her physician testify. *City of Warsaw* v. *Fisher*, 24 Ind. App. 46, disapproved. p. 483.

9. NEGLIGENCE.—*Oiled Floors.—Custom.—Evidence.*—In an action by a customer against defendant mercantile company for damages sustained by falling upon defendant's oiled floor, evidence that the floor dressing used by defendant was the kind commonly used in other stores, that defendant had used such dressing several years, and that no similar accident had occurred, is admissible, though not conclusive on the question of freedom from negligence. pp. 484, 485, 486, 490, 492, 494.

10. NEGLIGENCE.—*Care Required.—Mercantile Company and Customer.*—A mercantile company is required to use ordinary care to keep its floors in safe condition for the use of its customers. p. 485.

11. NEGLIGENCE.—*Contributory.—When Declared by Court.*—Where a person charged with contributory negligence shows that he used ordinary care, the court can say as a matter of law that he is not guilty of contributory negligence. p. 486.

12. MASTER AND SERVANT.—*Care.—Assumption of Risk.*—A servant assumes the ordinary risks of his service, and the master is required to exercise ordinary care for the safety of the servant. p. 486.

13. WITNESSES.—*Competency.—Superintendent of Gymnasium and Orthopedic Institute.*—The superintendent of a gymnasium and

orthopedic institute, who is not a licensed physician, is a competent witness as to any fact learned in his business. pp. 488, 494.

14. PHYSICIANS AND SURGEONS.—*Essentials.*—A "physician" is a person who has received the degree of doctor of medicine, or one lawfully engaged in the practice of medicine. p. 488.

15. PHYSICIANS AND SURGEONS.—*Practicing without License.*—The practice of medicine without a license constitutes a misdemeanor. p. 488.

16. TRIAL.—*Exclusion of Evidence.*—*Grounds for.*—*Changing of, on Appeal.*—Where evidence was excluded because of certain objections, other objections cannot be urged on appeal to sustain the trial court's ruling. p. 492.

17. NEGLIGENCE.—*Oiled Floors.*—*Custom.*—If a floor dressing was made and customarily used for the treatment of floors in stores, such use cannot serve as the sole basis of a charge of negligence. p. 493.

18. APPEAL.—*Reversal.*—*Errors.*—Where substantial errors have been committed against appellant and the Supreme Court is not convinced that a right result was reached, the judgment will be reversed. p. 495.

From Superior Court of Marion County (73,444) ; *Pliny W. Bartholomew,* Judge.

Action by Anna B. McCullough against the William Laurie Company. From a judgment on a verdict for plaintiff for $10,000, defendant appeals. *Reversed.*

*James Bingham, Charles Remster, John B. Elam, James W. Fesler* and *Harvey J. Elam,* for appellant.

*William N. Harding, Alfred R. Hovey, Clifton R. Cameron, Omer U. Newman* and *Albert M. Bristor,* for appellee.

MONTGOMERY, J.—Appellee recovered judgment for a personal injury sustained by reason of appellant's alleged negligence. The complaint, briefly summarized, avers in substance that, on December 3, 1906, appellant was engaged in selling dry goods, notions and other merchandise, at retail, at a certain place in Indianapolis ; and, by displaying goods in show windows and otherwise, invited the public to visit its place of business and to inspect and buy merchandise, therein kept for sale ; that on said date appellee entered said

place of business for the purpose of purchasing goods; that before appellee entered said storeroom, appellant had carelessly and negligently caused a floor dressing of a greasy and oily nature to be placed upon and spread over the surface of the floor upon which persons entering said store were compelled to walk, which caused said floor to become and remain oily, greasy, slippery and dangerous to walk upon, as appellant then and there well knew, and appellant carelessly and negligently permitted said conditions to remain and continue without notice or warning thereof to persons entering or walking about said store; that when appellee entered said store, as aforesaid, the room was insufficiently lighted and was crowded with people, and she had no notice, warning or knowledge of the oily, greasy, slick, slippery and dangerous condition of the floor, and, believing it to be safe and secure to walk upon, was attempting to pass from one aisle to another in said store through a passageway provided for that purpose, and by reason of the floor's being oily, greasy, slick, slippery and dangerous, as aforesaid, she suddenly slipped and fell to the floor with great force and violence, and thereby inflicted the injuries described, for which damages are demanded.

Appellant's demurrer to the complaint for insufficiency of facts was overruled; and it answered by a general denial. With the general verdict, answers to interrogatories were returned by the jury, upon which appellant unsuccessfully moved for judgment. Appellant's motion for a new trial was overruled, and judgment rendered upon the general verdict. Errors have been assigned upon the overruling of appellant's (1) demurrer to the complaint, (2) motion for judgment on the answers of the jury to interrogatories, notwithstanding the general verdict, and (3) motion for a new trial.

The first assignment is not insisted upon or in any
1. manner presented or supported in appellant's brief, and must therefore be regarded as waived. *Stamets*

v. *Mitchenor* (1906), 165 Ind. 672; *Major* v. *Miller* (1905), 165 Ind. 275; *Storer* v. *Markley* (1905), 164 Ind. 535.

The following interrogatory was propounded to the jury: "Did defendant know at the time plaintiff fell upon its floor that the floor where plaintiff fell was oily, greasy, slick, slippery and dangerous to walk upon?" The answer was: "No evidence." It is upon the answer to this interrogatory that appellant bases its insistence that judgment in its favor should have been rendered, notwithstanding the general verdict. The president of appellant company testified that the dressing was placed upon the floor in question on December 3, and the jury so found the fact, and found further that the dressing was not properly applied, and that the floor was oily, greasy, slick, slippery and dangerous to walk upon at the time of the accident.

The general verdict will not be overthrown by an answer to an interrogatory, unless the fact specially found relates to a material matter and is so repugnant to the gen-

2. eral verdict that both cannot be true. If it appears from the answers to interrogatories in this case that an element essential to appellee's recovery was not established by the evidence, then the general verdict cannot

3. stand. *Farmers, etc., Ins. Assn.* v. *Stewart* (1906), 167 Ind. 544; *Pennsylvania Co.* v. *Meyers* (1894), 136 Ind. 242; *Korrady* v. *Lake Shore, etc., R. Co.* (1892), 131 Ind. 261.

An answer of "No evidence" to an interrogatory submitted to a jury is a finding against the party having the burden as to the proposition stated in such interrogatory.

4. *Union Traction Co.* v. *Howard* (1910), 173 Ind. 335; *Chicago, etc., R. Co.* v. *Wilfong* (1910), 173 Ind. 308; *Cleveland, etc., R. Co.* v. *Hayes* (1906), 167 Ind. 454; *Indianapolis Abattoir Co.* v. *Temperly* (1903), 159 Ind. 651; *Arcade File Works* v. *Juteau* (1896), 15 Ind. App. 460.

It is the duty of the court to reconcile the special answers

with each other and with the general verdict, if it can reasonably be done; but if such special findings are inconsistent and contradictory of each other they will not control the general verdict.

The jury in this case found, as heretofore shown, that appellant placed the dressing upon the floor two days before the accident, whereby the floor was made "oily, greasy, slick, slippery and dangerous to walk upon."

Appellant was manifestly bound to know of the existence of conditions which it intentionally created, and was chargeable with knowledge of the probable consequences of its acts. The finding that there was "no evidence" on the subject of appellant's knowledge of the condition of the floor at the time of the accident is in direct conflict with the preceding finding that it made the conditions of which appellee complains. A finding with respect to knowledge ordinarily includes both actual and constructive, but the jury probably meant by its answer of "No evidence," in this connection, that appellant had no actual knowledge of any danger to be apprehended from the use of the floor dressing. The general verdict found that the condition of the floor was dangerous; and continued in that state for such length of time as to charge appellant with knowledge of the danger, and hence to make it liable for the consequences. The interrogatory is objectionable in form, but, without further elaboration, we are clear that, taken in connection with others, it is not sufficient to overthrow the general verdict; and the court did not err in overruling appellant's motion for judgment in its favor.

Appellant's motion for a new trial embraced nearly one hundred specified grounds or reasons; but, we shall consider in detail only three, which have been urged as most important and controlling.

It appeared from the evidence that prior to the accident upon which this action is founded appellee had been treated by Doctor Kolmer and Mr. Zink, who were not called by her

as witnesses in this case; and, in the course of argument to the jury, appellant's counsel said: "Why did plaintiff not have Doctor Kolmer and Mr. Zink here to testify to her condition, if she did not have curvature of the spine?" Which statement, upon objection of appellee's counsel, the court directed the jury to disregard, and to this action of the court appellant excepted.

It is provided by statute that "The following persons shall not be competent witnesses: * * * Fourth.

7. Physicians, as to matter communicated to them, as such, by patients, in the course of their professional business, or advice given in such cases." §520 Burns 1908, §497 R. S. 1881.

The statute was designed to subserve the good of society and to promote a full disclosure of all facts and conditions necessary to a correct diagnosis and proper treatment of human ailments, by securing the patient against involuntary disclosure of information given in confidence. The prohibition of the statute is absolute in its terms, yet its provisions were made for the protection of the patient, and the privilege of secrecy granted may be waived by the one directly concerned. It is manifest that in many instances the physician may acquire, by virtue of his office, only such

8. information as might, with propriety and without embarrassment to the patient, be published to the world; while in other cases a disclosure would be revolting to the sensibilities of the public and injuriously affect the business and social standing of the patient in the community, without any countervailing good results. It is obvious, therefore, that the patient may, with good reasons, be clothed with a discretion to waive the privilege of secrecy. The purposes of this statute are broader than the exigencies of any given lawsuit, and in the legislative judgment the considerations of public policy and general advantage to mankind from the establishment of inviolable confidence between physician and patient outweigh the private interests of any

particular litigant. In electing not to call his physician as a witness, it is clear that a party may have motives and potent reasons in noway involving the suppression of evidence prejudicial to his interests in the case on trial. The law grants to the patient the unqualified right to exclude the testimony of his physician as to facts acquired in confidence, and the exercise of this privilege cannot be impaired by allowing opposing counsel in argument to impugn his motives or charge him with suppressing important and relevant evidence. The general rule, authorizing an inference from the withholding of important and material evidence upon the matter in issue, that such evidence if heard would be prejudicial to the cause of the party having it in his power to produce it, has no application to privileged communications which the law excludes on grounds of public policy. The court in this case properly denied counsel for appellant the right to comment upon the failure of appellee to call Doctor Kolmer as a witness in her behalf, and in directing the jury to disregard the statement made on that subject. *Brackney v. Fogle* (1901), 156 Ind. 535; *Lane v. Spokane Falls, etc., R. Co.* (1899), 21 Wash. 119, 57 Pac. 367, 75 Am. St. 821, 46 L. R. A. 153; *Freeman v. Fogg* (1890), 82 Me. 408, 19 Atl. 907; *Graves v. United States* (1893), 150 U. S. 118, 14 Sup. Ct. 40, 37 L. Ed. 1021. The holding in the case of *City of Warsaw v. Fisher* (1900), 24 Ind. App. 46, to the effect that adverse counsel have a right to comment on the failure of a party to avail himself of the testimony of his physician, is disapproved.

Appellant, by proper questions, sought to show that the floor dressing to which this accident is attributed was in use in other stores in the city of Indianapolis at and prior to the time appellee received her injury, the experience of appellant in the use of this floor dressing through a term of years, and that no similar accidents had occurred. All such evidence was excluded.

9. 

Appellant insists that the proffered testimony was com-

petent as tending to prove that appellant was not lacking in the exercise of ordinary care for the safety of its customers, and was not chargeable with actionable negligence, so long as its conduct measured up to the standard exemplified by the general custom and practice prevailing among persons in like situation and engaged in similar business. In the case of *Louisville, etc., R. Co.* v. *Bates* (1897), 146 Ind. 564, relating to the inspection of a car, this court said: "No man is held to a higher degree of skill or care than a fair average of his trade or profession, and the standard of due care is the conduct of the average prudent man. If the inspection is made in the usual and ordinary way, the way commonly adopted by those in like business, it cannot be said that it was done negligently. In determining whether an inspection was made with ordinary care, a jury can only find facts showing whether the same was made in the usual and ordinary manner, the one commonly adopted by men of ordinary care and prudence engaged in the same business under like circumstances. If it was so performed it was made with due care, and a jury cannot be permitted to say that it was negligent. They cannot be allowed to set up a standard which shall in effect dictate the customs or control the business of a community." See, also, *Connor* v. *Citizens St. R. Co.* (1896), 146 Ind. 430, 442; *Lake Shore, etc., R. Co.* v. *McCormick* (1881), 74 Ind. 440.

Appellant, as the owner and occupant of the building in question, having induced appellee to enter therein, by an implied invitation, owed her the duty of using reasonable or ordinary care to have and keep its premises in safe and suitable condition, so that she would not be unnecessarily or unreasonably exposed to danger. As a general rule the custom and usages of well-appointed and well-managed concerns in the business, or with respect to the particular matter, under investigation, are competent evidence on the question of the care and diligence required in the proper conduct of such busi-

ness or in the performance of the particular act under consideration. If a person charged with contributory negligence is shown to have exercised that degree of care for his own safety which persons of ordinary prudence in like circumstances are accustomed to use, it may be declared as a matter of law that he is not guilty of such negligence. The relation of master and servant is contractual, and the servant is held to an assumption of the ordinary risks and hazards of the business in which he engages, and the master to the exercise of that degree of care for the safety of the servant, which men of ordinary prudence engaged in the same line of business commonly employ under like circumstances. In other negligence cases, not founded upon contractual obligations, in which the use of ordinary care for the safety of others is required, it is defined in the same general terms, as that care which persons of average prudence ordinarily use in like circumstances, but its application is usually more difficult by reason of the distinctive circumstances of the particular case. In such cases, as bearing upon the question of negligence, the custom, usage and practice, if any, with respect to the inculpatory act, of other well-appointed and prudently-managed concerns engaged in a similar business are clearly competent. A class of tradesmen, for a time, might suffer a negligent usage or practice to continue, and might not exercise that regard for the safety of others which should be exacted, but in the end the only standards known to the law are human, and such as men of reasonable prudence and care establish. It is apparent that the weight to be accorded to any such custom or usage must depend upon the extent or the universality of its use and its age or continuance in time, among other circumstances. Our conclusion is that in this case, and the class of cases to which it belongs, the custom of using the same kind of or similar floor dressings in other stores and public buildings was competent but not conclusive evidence upon the question of ap-

pellant's negligence. The offered testimony upon this subject was material, and should have been admitted for the consideration of the jury, together with other facts and circumstances given in evidence, and the court erred in excluding it. *Knickerbocker Ice Co.* v. *Gray* (1908), 171 Ind. 395; *Anderson* v. *Fielding* (1904), 92 Minn. 42, 99 N. W. 357, 104 Am. St. 665; *Grand Rapids, etc., R. Co.* v. *Huntley* (1878), 38 Mich. 537, 31 Am. Rep. 321; *Louisville, etc., R. Co.* v. *Allen* (1885), 78 Ala. 494; *Jones* v. *Malvern Lumber Co.* (1893), 58 Ark. 125, 23 S. W. 679; *Keim* v. *City of Fort Dodge* (1904), 126 Iowa 27, 101 N. W. 443; *Cooper* v. *Central Railroad, etc.* (1876), 44 Iowa 134; *Smith* v. *St. Louis, etc., R. Co.* (1878), 69 Mo. 32, 33 Am. Rep. 484; *McCarthy* v. *Boston Duck Co.* (1896), 165 Mass. 165, 42 N. E. 568; *Devaney* v. *Degnon-McLean Construction Co.* (1903), 79 N. Y. Supp. 1050; *Kehler* v. *Schwenk* (1892), 151 Pa. St. 505, 25 Atl. 130, 31 Am. St. 777; *Fritz* v. *Western Union Tel. Co.* (1902), 25 Utah 263, 71 Pac. 209; *Boyce* v. *Wilbur Lumber Co.* (1903), 119 Wis. 642, 97 N. W. 563.

Appellant also had a right to introduce evidence showing the length of time it had been using this floor dressing on its store floors, the extent of the use of such floors by the public, under conditions substantially similar to those existing at the time appellee sustained her injuries, and the fact, if true, that no prior accidents had occurred from such use. If hundreds or thousands of people had used this floor under similar conditions in safety, and without accident through a term of years, such fact should have some weight as tending to prove that the floor was not unusually dangerous, and that appellant was not lacking in diligence in failing to anticipate and provide against some such accident, and that appellee's injury was in some measure chargeable to her own failure to exercise that care which others of ordinary prudence used in the same circumstances. *Stringham* v. *Hilton* (1888), 111 N. Y. 188, 18 N. E. 870, 1 L. R. A. 483; *Myers* v. *Hudson Iron Co.* (1889), 150 Mass. 125, 22 N. E. 631, 15

Am. St. 176; *St. Louis National Stock-Yards* v. *Godfrey* (1902), 198 Ill. 288, 65 N. E. 90.

Prior to the time of receiving the injuries for which she sues, appellee, upon the advice of a physician, took treatment consisting of gymnastic exercises, of James L. Zink, superintendent of the Zink Gymnastic and Orthopedic Institute. Appellant introduced Zink as a witness, and offered to prove by him what he knew of appellee's physical deformity and infirmities, both from his own examination and from what she told him while under his care. Zink had never applied for or received a physician's license, and was not a physician as defined by our statute. The offered evidence was excluded as privileged, under the provisions of §520 Burns 1908, §497 R. S. 1881, excluding physicians as witnesses "as to matter communicated to them, as such, by patients, in the course of their professional business."

"The word 'physician' is defined to mean a person who has received the degree of doctor of medicine from an incorporated institution; one lawfully engaged in the practice of medicine." 30 Cyc. 1544.

It is made unlawful for any one to practice medicine in this State without first obtaining a license so to do; and practicing medicine without license is punishable as a misdemeanor. §§8400, 8410 Burns 1908, Acts 1897 p. 255, §§1, 9.

Information gained by a physician while in attendance upon his patient was not privileged at common law; but as hereinbefore shown it has been made so by statute in this State, and in many other states. This statute is in derogation of the common law, and is not to be enlarged by intendment. It manifestly relates to general practitioners and those only whose business as a whole comes fairly within the definition of "physician." By the terms of the statutes in some of the states the ban of secrecy is ex-

tended only to information given to those "authorized" to practice medicine or surgery; but, as we have seen, the word physician includes those only who are "lawfully" engaged in the practice of medicine, and therefore duly authorized to pursue that vocation. This is the sense in which it is used in our statute. It will not be presumed that this exceptional privilege was intended to apply to transactions between citizens and charlatans or impostors whose business is conducted in violation of the law, nor can it be extended, by construction, to persons employing other curative processes which do not come within the ordinary meaning of the term "practicing medicine." *Wiel* v. *Cowles* (1887), 45 Hun 307.

It is held that a statute prohibiting any person authorized to practice medicine or surgery from disclosing any information acquired while attending in his professional character, had no application to dentists (*People* v. *DeFrance* [1895], 104 Mich. 563, 62 N. W. 709, 28 L. R. A. 139), nor to a druggist furnishing medicines to a person applying for them (*Brown* v. *Hannibal, etc., R. Co.* [1877], 66 Mo. 588), nor to a veterinary surgeon (*Hendershot* v. *Western Union Tel. Co.* [1898], 106 Iowa 529, 76 N. W. 828, 68 Am. St. 313).

The statute of Colorado excludes the testimony of physicians authorized under the laws of that state, and the evidence of physicians authorized to practice in another state was held competent. *Head Camp, etc.,* v. *Loeher* (1902), 17 Colo. App. 247, 68 Pac. 136; *Colorado Springs, etc., R. Co.* v. *Fogelsong* (1908), 42 Colo. 341, 94 Pac. 356.

The New York courts hold that when a party seeks to exclude evidence under a statute similar to ours, the burden is upon him to bring the case within its purview. *People* v. *Schuyler* (1887), 106 N. Y. 298; *People* v. *Koerner* (1897), 154 N. Y. 355.

The witness Zink was not a physician within the meaning

of that word as used in §520, *supra,* and made no claim to be such, and the information which he acquired while giving appellee a course in gymnastic exercises was not privileged.

Alleged errors, predicated upon the giving and refusing to give certain instructions, have been. presented, but they will probably not arise again, since a decision of the questions already considered disposes of the chief matters in controversy between opposing counsel. The errors in excluding testimony, as before indicated, entitle appellant to a new trial.

The judgment is reversed, with directions to sustain appellant's motion for a new trial, and for further proceedings not inconsistent with this opinion.

## ON PETITION FOR REHEARING.

MONTGOMERY, J.—Appellee's counsel, on petition for rehearing, challenge all the holdings of the court adverse to the interests of their client. In the original opinion

9. we said: "Appellant, by proper questions, sought to show that the floor dressing to which this accident is attributed was in use in other stores in the city of Indianapolis at and prior to the time appellee received her injury." This fact appeared to us to be true beyond question; but appellee's counsel, with apparent earnestness say: "We respectfully ask this court where in the record it found such proper questions?"

Appellant introduced Thomas Kennedy as a witness, and showed that his business was selling floor oil to appellant and others. He was then asked how long he had been selling the oil to appellant. Appellee's counsel objected, and appellant stated that the witness, if permitted to answer, would testify that he had been making such sales for five or six years. The objection was sustained. It may be stated once for all that in each instance mentioned in this connection the question was in good form, the objection was general, and a

proper offer of specific responsive proof was timely made. The court refused to permit appellant to prove that the oil so bought was used on its floors, except at the precise time of the accident in question. Appellant's counsel clearly stated his purpose and desire to show the length of time such oil had been used, as tending to prove that appellant had no knowledge that there was any danger from its use, but the evidence was excluded.

The witness testified that he had been selling this oil for six or seven years, that he had had experience in applying it to floors in many stores, and that, on an average, a gallon should cover about three hundred square feet of floor space. This question was then asked: "State to the jury how the oil in question should be applied to the floor;" and a like question relating to appellant's floor in December, 1906. Objections were sustained to both questions. Witness was asked to state the condition in which appellant's floor should have been immediately after the oil had been applied to it, if properly applied. Appellee's general objection to this question was sustained. Witness was next asked what other dry-goods stores in the city of Indianapolis used the oil in question for dressing their floors in December, 1906, and then as to certain specific stores, and among others as to the New York Store, whether it used the oil on its floor at the time stated, whether it was not a five story and basement building and carried the same line of goods as appellant, and whether it was not one of the leading dry-goods stores of the city. Appellee's objections were sustained to each inquiry. The following questions were then propounded: "You may state to the jury whether or not the oil for floors that you sold was one in common use here upon store floors by the merchants of this city;" and "You may state to the jury whether or not the oil which you say you sold for use upon the store floor of defendant was one in common use in well-regulated dry-goods stores of this city." A further effort was made to prove that this floor dressing was in use on the

floors and stairways of school buildings in the city of Indianapolis, but in every case without success. This exhibition of the record relating to one witness will certainly show the attitude of appellee's counsel in the trial court. They thwarted every effort to show the use of the oil, except at the time of the accident, not on account of the form of the questions, but because, as claimed, all such evidence was wholly incompetent. Appellee's counsel now seek to sustain their position, on the ground that no offer was made to show that the persons using such oil were reasonably prudent men. This is manifestly an afterthought, which, if tenable, could not be now availing, since the only objection made at the time was the stereotyped phrase that the offered testimony was "incompetent, irrelevant, and immaterial, and does not tend to prove any issue in this cause." Appellant sought to show the extent and character of the use of this oil, and that it was in common use in dry-goods stores in the city of Indianapolis. This was sufficient, and appellee's counsel must be held to the position voluntarily assumed by them, and cannot be allowed to take advantage of an objection not made to the trial court, unless the evidence was manifestly incompetent on any theory. We trust we have made clear the fact that the questions upon which the case was decided were properly presented. Our holding in the former opinion, that the custom of using the same and similar floor dressings in other stores and public buildings in the city of Indianapolis was competent, is not challenged in appellee's petition. It is, however, insisted that we erred in holding that appellant had a right to introduce evidence showing the length of time it had been using this floor dressing on its store floors, the extent of the use of such floors by the public under conditions substantially similar to those existing at the time appellee sustained her injuries, and that no prior accidents had occurred from such use. This holding follows as a corollary of the other. But counsel insist that it is in conflict with

the following cases decided by this court. *Nave* v. *Flack* (1883), 90 Ind. 205, 46 Am. Rep. 205; *Bauer* v. *City of Indianapolis* (1884), 99 Ind. 56; *Cleveland, etc., R. Co.* v. *Wynant* (1887), 114 Ind. 525, 5 Am. St. 644.

We were not unmindful of these cases, and others upon which they were based, in reaching our conclusion in this case. That line of cases relates chiefly to the use of public highways, and the principle declared in substance is, that if a place is in reality dangerous, and the party charged is in fact guilty of negligence, then he will be liable, although the dangerous place may have been much used. This principle is sound and undeniably correct. This case is not of that class and does not come within the principle declared. In this case appellee, both in the complaint and on the trial, proceeded upon the assumption that the use of the floor oil made a *prima facie* case of negligence. Her counsel excluded evidence offered to show how the oil should be applied to the floor, and introduced no evidence tending to prove that the oil was spread over the floor in an improper manner.

It was made to appear by appellant that the oil in question was a preparation made and sold for the particular purpose for which it was being used at the time of this accident. 17. If an article or instrumentality has been designed for a particular use and adopted and actually put into common or general use in the way intended, such use cannot serve as the sole basis of a charge of negligence. In the case of *Prosser* v. *Montana Cent. R. Co.* (1895), 17 Mont. 372, 43 Pac. 81, 30 L. R. A. 814, the court said: "But when it does not appear that the act is positively negligent, we are of opinion that it is competent to show the usage or custom of competent and prudent persons in performing the act."

In the case of *Hillyard* v. *Grand Trunk R. Co.* (1885), 8 Ont. 583, the court held that evidence of the common use of fences of the kind used in other townships, and that other

municipalities held out inducements to erect them, should not have been rejected, as showing that they were not considered dangerous or a nuisance. In the case of *Hoppe* v. *Parmalee* (1900), 20 Ohio C. C. 303, involving the operation of a machine, the court declared "that to show that defendants had knowledge that accidents were likely to occur at this machine, it would have been competent for the plaintiff to show that other accidents had occurred upon like circumstances—and we know of no good reason why the converse should not be allowed, that is to say; to show by a witness familiar with the machine, that, during its operation for many years, no accident had occurred." See, also, *Cleveland, etc., R. Co.* v. *Newell* (1885), 104 Ind. 264; *City of Fort Wayne* v. *Coombs* (1886), 107 Ind. 75, 57 Am. Rep. 82. It seems clear to us, upon principle, that appellant had a right not only to show that the floor preparation in question was an article in common use, but also, in order to rebut any charge or imputation that such usage was hazardous to the public safety and negligent, it was competent to show that no accidents had resulted from such use under circumstances substantially like those existing at the time of appellee's fall.

The competency of Zink as a witness is again challenged and argued. We can add little to what is found in the former opinion upon this question. It is suggested that his evidence, if heard, would have been only cumulative. The rule as to cumulative evidence has no application when competent testimony has been excluded. Appellee's physical condition prior to this accident was a very material and important matter in this case. Zink had a better opportunity to know her actual condition at the time she was under his care than perhaps any other witness in the case, and his evidence should have been heard.

We are finally asked to save the case, under §700 Burns 1908, §658 R. S. 1881, on its general merits. The errors

pointed out are substantial, not technical; and at all events, as the case now stands, we are not at all convinced that a right result has been reached, either on the question of liability, or to the extent of the injuries sustained.

The petition is overruled.