VERNA HAMMOND *v.* M. L. ALLEGRETTI, M.D. ET AL.

[No. 674S110.  Filed June 6, 1974.]

*Saul I. Ruman,* of Hammond, for appellant.

*Robert D. Hawk, Spangler, Jennings, Spangler and Dougher-ty*, of Gary, for appellees.

## ON PETITION TO TRANSFER

HUNTER, J.—The plaintiff-petitioner filed suit in Lake Circuit Court seeking damages for injuries sustained as a result of a slip and fall upon defendant-respondent, Hammond Clinic's, icy parking lot. The cause was then venued to the Porter Superior Court. Upon defendant's motion, judgment on the evidence was entered by the trial court at the conclusion of plaintiff's case in chief. The Court of Appeals affirmed.

This case presents the following question of law: What duty of care does a landowner-inviter owe to a business invitee with respect to the natural accumulation of ice and snow on the landowner's private parking lot adjacent to his place of business?

The Court of Appeals, per Judge Hoffman, relying primarily on the case of *Kalicki* v. *Beacon Bowl, Inc.* (1968), 143 Ind. App. 132, 238 N.E.2d 673, held that a landowner-inviter does *not* owe a duty to a business invitee to clear the *natural* accumulation of snow and ice from an open-air parking lot. The Court, however, stated that only if the landowner-inviter "creates a more dangerous condition than would otherwise be attributable to the natural accumulation of ice and snow will liability be imposed."

The Court of Appeals summarized the facts of the case as follows:

"On January 4, 1967, there was approximately 1 inch of snow on the ground and approximately ½ inch of new snow fell. On January 5, 1967 another inch of snow fell. No snow fell on January 6, 1967, however, .05 of an inch of rain and snow fell during the morning of January 7, 1967.

"On January 4, 1967, the parking lot of the Hammond Clinic [the defendant herein] had been plowed and salted by R. L. Babcock.

"The plaintiff testified that on January 7, 1967 she drove to the Hammond Clinic accompanied by her husband and two other passengers in the car. She testified that there was ice on the highway but it was not solid. She also

testified that there was ice and snow on the whole parking lot. She testified that she parked her car in the parking lot and went into the clinic. Upon returning to her car she slipped and fell on the ice thereby causing the injuries complained of in this appeal."

We find the Court of Appeals' decision (and the decision in *Kalicki*) to be entirely inconsistent with the bedrock principles of occupier's liability. For this reason, we have granted transfer to delineate the proper rule of law and, in so doing, expressly overrule *Kalicki*.

The duty owed by a landowner-inviter to a business invitee was formulated by the English Court of Common Pleas in the landmark case of *Indermaur* v. *Dames* (1866), L.R. 1, C.P. 274, 35 L.J.C.P. 184, aff'm'd. L.R. 2, C.P. 311, 36 L.J.C.P. 181.

"The authorities respecting guests and other bare licensees, and those respecting servants and others who consent to incur a risk, being therefore inapplicable, *we are to consider what is the law as to the duty of the occupier of a building with reference to persons resorting thereto in the course of business, upon his invitation, express or implied.* The common case is that of a customer in a shop: but it is obvious that this is only one of a class; for, whether the customer is actually chaffering at the time, or actually buys or not, he is, according to an undoubted course of authority and practice, entitled to the exercise of reasonable care by the occupier to prevent damage from unusual danger, of which the occupier knows or ought to know, such as a trap-door left open, unfenced, and unlighted: Lancaster Canal Company v. Parnaby, 11 Ad. & E. 223 (E.C.L.R. vol. 39), 3 P. & D. 162; per cur. Chapman v. Rothwell, E.B. & E. 168 (E.C.L.R. vol. 96), 27 L.J. (Q.B.) 315, where Southcote v. Stanley, 1 H. & N. 247, +25 L.J. (Ex.) 339, was cited, and the Lord Chief Justice, then Erle, J., said: 'The distinction is between the case of a visitor (as the plaintiff was in Southcote v. Stanley), who must take care of himself, and a customer, who, as one of the public, is invited for the purposes of business carried on by the defendant.' *This protection does not depend upon the fact of a contract being entered into in the way of the shopkeeper's business during the stay of the customer, but upon the fact that the customer has come into the shop in pursuance of a tacit invitation given by the shopkeeper, with a view to business which concerns himself.*
\* \* \*

"And, with respect to such a visitor at least, we consider it settled law, that he, *using reasonable care on his part for his own safety, is entitled to expect that the occupier shall on his part use reasonable care to prevent damage from unusual danger, which he knows or ought to know; and that, where there is evidence of neglect, the question whether such reasonable care has been taken, by notice, lighting, guarding, or otherwise, and whether there was contributory negligence in the sufferer, must be determined by a jury as matter of fact.*" (emphasis added) L.R. 1 C.P. at 286, 287.

*Indermaur* has become a cornerstone of occupier's liability law in all American common law jurisdictions. *The Restatement of Torts* (Second) § 343 (1965) has incorporated the English rule:

"A possessor of land is subject to liability for physical harm caused to his invitees by a condition on the land, but only if, he (a) knows *or by the exercise of reasonable care* would discover the condition, and should realize that it involves an unreasonable risk of harm to such invitees, and

   (b) should expect that they will not discover or realize the danger, or will fail to protect themselves against it, and

   (c) *fails to exercise reasonable care to protect them against the danger.*" (emphasis added)

Dean Prosser characterizes the nature of the landowner's duty vis-a-vis an invitee as follows:

"The occupier is not an insurer of the safety of invitees, *and his duty is only to exercise reasonable care for their protection. But the obligation of reasonable care is a full one, applicable in all respects, and extending to everything that threatens the invitee with an unreasonable risk of harm.* The occupier must not only use care not to injure the visitor by negligent activities, and warn him of latent dangers of which the occupier knows, but he must also inspect the premises to discover possible dangerous conditions of which he does not know, and take reasonable precautions to protect the invitee from dangers which are foreseeable from the arrangement or use. The obligation extends to the original construction of the premises, where it results in a dangerous condition. The fact that the premises are open to the public must be taken into account, and will call for greater care

than in the case of a visitor at a private home. If the presence of children is to be expected, their meddling propensities must be anticipated; and the principle of 'attractive nuisance' applies to child invitees no less than to trespassers.

"On the other hand there is no liability for harm resulting from conditions from which no unreasonable risk was to be anticipated, or those which the occupier did not know and could not have discovered with reasonable care. The mere existence of a defect or danger is not enough to establish liability, unless it is shown to be of such a character or of such duration that the jury may reasonably conclude that due care would have discovered." (citations omitted) (emphasis added) Prosser, Law of Torts (4th ed.) (1971), § 61, p. 392-3.

The venerable *Indermaur* principle is also firmly imbedded in the decisional law of Indiana—which, to us, makes the Court of Appeals' decisions in this and the *Kalicki* case all the more remarkable. This Court defined the legal duty owed by a business-landowner to a business-invitee as early as 1884:

"If, however, the owner or occupant of lands, by any enticement, allurement or inducement, causes others to come upon or over his lands, then he assumes the obligation toward persons so coming, *to provide a reasonably safe and suitable way for that purpose.* An owner may not by invitation, either express or implied, induce another to come upon or pass over his premises, without keeping them in such condition of safety as to admit of his passing over by the means designated or prepared without injury, *provided he uses due care.* To make the owner or occupant liable for an injury received by one passing over his premises, something more than a mere passive acquiescence in the use of his land by others is necessary. So long as his lands are used by others, be it never so frequent, for their own convenience, he is not liable. But if, by some act or designation of his, persons are led to believe that a way or path over premises was intended to be used by travellers, or others having lawful occasion to go that way, then as to such persons the owner or occupant comes under an obligation to keep it free from dangerous obstructions or pitfalls which might cause them hurt. The inducement must be equivalent to an invitation, either express or implied; mere permission is not sufficient. *Carleton* v. *Franconia Iron and Steel Co.,* 99 Mass. 216." (emphasis added) *The Evansville & Terre Haute R. R. Co.* v. *Griffin,* 100 Ind. 221, 223.

See also: *The Indiana, Bloomington and Western Railway Co., et al.* v. *Barnhart* (1888), 115 Ind. 399, 16 N.E. 121; *William Laurie Co.* v. *McCullough* (1910), 174 Ind. 477, 90 N.E. 1014; *East Hill Cemetery Co. of Rushville* v. *Thompson* (1912), 53 Ind. App. 417, 97 N.E. 1036 (landowner owes an affirmative duty to a business invitee).

Judge Emmert, writing for a unanimous court in the case of *Robertson Bros. Dept. Store* v. *Stanley* (1950), 228 Ind. 372, 90 N.E.2d 809, cites the following line of authority in support of the proposition that a business-landowner owes a duty of ordinary reasonable care to maintain business premises in a reasonably safe condition:

> " 'While it is recognized that the proprietor of a store is not burdened by law with any unusual degree of care for the safety of customers, and in that regard is required only to exercise *ordinary care* to keep his store in a reasonably safe condition, and is not an insurer of the safety of his customers, nevertheless, he must maintain it in such manner as not to cause injury to one lawfully entering the store for the purpose of making purchases.' *Great Atlantic and Pacific Tea Co.* v. *Custin* (1938), 214 Ind. 54, 59, 13 N.E.2d 542, 14 N.E.2d 538. 'Invitation, whether express or implied, *imposes the duty to use ordinary care that the place of invitation be reasonably safe for the invitee.'* *Silvestro* v. *Walz* (1943), 222 Ind. 163, 170, 51 N.E.2d 629. 'This duty is an active, continuous one. It owed her the duty of protection against injury through negligent acts of its employees.' *Sears, Roebuck & Co.* v. *Peterson* (CCA 8th, 1935), 76 F. 2d 243, 246. See also *J. C. Penny, Inc.* v. *Kellermeyer* (1939), 107 Ind. App. 253, 19 N.E.2d 882, 22 N.E.2d 899; *F. W. Woolworth Company* v. *Moore* (1943), 221 Ind. 490, 48 N.E.2d 644." (emphasis added) 228 Ind. at 378.

In light of the foregoing discussion, one is inescapably led to the conclusion that a landowner or occupier is under a duty to exercise reasonable care for the protection of invitees on the business premises. This duty arises as a *matter of law*. The question of whether the defendant-landowner exercised the requisite degree of care is strictly a question for the trier of fact. *Robertson Bros., supra,* at 381.

The Court of Appeals and the appellee concede that the above general rules have continued vitality. However, the Court of Appeals in both this case and *Kalicki* carves out an exception to the sound principle of law first enunciated in *Indermaur* and later zealously followed in the courts of Indiana. That exception is that an owner or occupier of property is under *no* duty *as a matter of law* to remove natural (as distinguished from unnatural) accumulations of snow and ice from an open-air parking lot owned or occupied by the inviter. Although this position is supported by ample authority from other jurisdictions,[1] we believe it to be repugnant to the foundational principles of common law occupier's liability.

It is important, at this point, to emphasize that this case involves a *private* parking lot *adjacent* to a medical clinic. It does *not* involve a public sidewalk or public parking area. Our decision in this case should be limited to its facts and no others. Two cases upon which the Court of Appeals relied involve sidewalk accidents. In the public sidewalk cases, there are additional factors which are not present in this case—those being municipal ordinances requiring abutting owners or occupiers to remove ice or snow and the common law duty of municipalities to maintain reasonably safe streets and sidewalks.[2] In the case at bar, the Hammond Clinic maintained *exclusive private* dominion over the adjacent parking area.

We must emphasize that we are *not* advocating the imposition of strict liability in this case, nor are we suggesting that there be an inflexible rule requiring that a business inviter immediately remove the natural accumulation of ice and snow from his business premises. What

1. Crawford v. Soennichsen (1963 Neb.), 120 N. W. 2d 578, 175 Neb. 87; Crenshaw v. Firestone Tire & Rubber Company (1963 N. M.), 380 P. 2d 828, 72 N. M. 84; Hallett v. Furr's Inc. (1963 N. M.), 378 P. 2d 613, 71 N. M. 377; Watts v. Holmes (1963 Wyo.), 386 P. 2d 718; Wise v. Great Atlantic & Pacific Tea Co. (1953 Ohio), 115 N.E.2d 33, 94 Ohio App. 320; Zide v. Jewel Tea Company (1963 Ill.), 188 N.E.2d 383, 39 Ill. App. 2d 217.
2. See: Cowin v. Sears, Roebuck and Co. (1955), 125 Ind. App. 624, 129 N.E.2d 131; Nyers v. Gruber (1971), 149 Ind. App. 117, 275 N.E.2d 863.

we are advocating is that there be a duty imposed upon the landowner-inviter to exercise reasonable care in the maintenance of business premises. This duty should obtain *as a matter of law* in all cases arising out of the inviter-invitee context. Ultimate legal liability is, of course, another matter, separate and distinct from the existence of a legal duty. There will be situations when the natural accumulation of ice and snow will render the inviter liable, and others when it will not. The critical point to be made is that the condition of the premises and the actions taken or not taken by the inviter and invitee must all be considered by the trier of fact in determining the existence or non-existence of legal liability. To preclude the trier of fact's consideration of the condition of the premises at the time of the accident is to unnecessarily and unjustifiably dilute a well-established principle of tort law.

In our judgment, the dilution of the inviter's duty undermines the basic principles of public responsibility. If the inviter is absolved of all responsibility, vis-a-vis privately operated parking lots, who, then, will remove the natural accumulation of ice and snow when such accumulations become hazardous? Clearly, the removal of ice and snow from *private* parking lots is not the responsibility of a municipality or the state, and is it not highly probable that *at some point in time* the natural accumulation of ice and snow will create hazardous conditions? Our society is largely predicated on an allocation of duties and responsibilities among its members and government. This allocation enables us to achieve a reasonable degree of order, predictability and accountability. Of course, this allocation or distribution of burdens should be equitable and reasonable.

We are unable to discern any reason why the responsibility for maintaining reasonably safe business premises should not be placed upon the shoulders of an inviter. The business inviter holds out the premises for the use of invitees and derives a direct benefit from their presence thereon. Surely, the distribution of such a burden to an inviter—particularly

in light of the benefits derived and the state's lack of dominion, does not constitute an unreasonable or inequitable allocation.

There is substantial authority from other jurisdictions to support our position.[3] However, we find the Alaska Supreme Court's decision in *Kremer* v. *Carr's Food Center, Inc.* (1969), 462 P. 2d 747, to be particularly germane. The following are excerpts from the opinion which we believe to be dispositive of the issues in this case.

> "In reaching these conclusions, we have rejected Carr's contention that no cause of action can be maintained by a business invitee against a landowner for injury resulting from a slip and fall occasioned by *natural accumulations of ice and snow.* We have also declined to adopt Carr's argument that any duty of care owed by a possessor of land to a business invitee is discharged by virtue of the invitee's knowledge of the dangerous condition of the land. Finally, our holding in the case at bar reflects the view that none of our own prior precedents preclude the result reached here.

> \* \* \*

> "Thus far the natural-unnatural accumulation of ice and snow rule has been limited to cases involving the duty owed by municipalities to licensees who, as a class, must take the condition of the land as the possessor himself uses it. We decline to extend this rule to the business invitee-private possessor of land situation. *Unlike the licensee, the invitee enters upon the possessor's land accompanied by an implied representation that 'the land has been prepared and made*

---

3. A. Isaacson v. Husson College (1972), 297 A. 2d 98: The Supreme Court of Maine held that it was a jury question whether the University used sufficient care in clearing a pathway between a dorm and dining hall. That court, however, specifically limited the application of the enunciated rule to the college situation and noted that it would not apply to the passer-by situation.

B. Langhorne Road Apts., Inc. v. Bisson (1966), 207 Va. 474, 150 S. E. 2d 540, involving a landlord and tenant. The Supreme Court of Virginia held that a landlord had a duty to remove the accumulation of snow within a reasonable period of time.

C. Nelson v. Great Atlantic and Pacific Tea Co., 48 N. J. Super. 300, 137 A. 2d 599 involved the involuntary dismissal of a cause after opening argument. The court in effect indicated that there could be liability for failure to properly light a parking lot.

D. Morris v. Atlantic and Pacific Tea Co. (1956), 384 Pa. 464, 121 A. 2d 135 involved a slip and fall on an icy grocery store parking lot. The question of negligence was a matter for the jury.

E. Merkel v. Safeway Stores, Inc. (1962), 77 N.J. Super. 535, 187 A. 2d 52 parallels the above noted Morris decision.

*ready and safe for his reception.'* A business invitee may be entitled to the undertaking of affirmative steps by the possessor of land in order to promote the invitee's safety. We discern a significant distinction between the standard of care which is owed by municipalities in Alaska to licensees upon their streets and sidewalks, and that owed by private possessors of land, such as Carr's, to a business invitee. Alaska's climatic conditions do not metamorphize all risks arising from ice and snow conditions into reasonable risks for the business invitee. Nor are we persuaded by appellee Carr's policy argument that in Alaska it would result in unreasonable costs to the private-commercial possessor of land to require the possessor to clear ice and snow, or otherwise remedy conditions which amount to unreasonable risks of harm to business invitees. *The mere fact that snow and ice conditions prevail for many months throughout various locations in Alaska is not in and of itself sufficient rationale for the insulation of the possessor of land from liability to his business invitee.* Nor do such climatic conditions negate the possibilty that the possessor should have anticipated harm to the business invitee despite the latter's personal knowledge of the dangerous snow and ice conditions or the general obviousness of such conditions." (emphasis added) 462 P. 2d at 750-1-2.

In conclusion, the *duty* of reasonable care owed by an inviter to an invitee should in no way be diminished by the presence of natural accumulations of ice and snow. The trier of fact in determining whether the inviter engaged in substandard conduct proximately resulting in injury to the invitee, i.e., whether the inviter is legally liable, should consider the existence of *natural and unnatural* accumulations of ice and snow. Of course, the trier of fact should take into account a vast range of evidence, to include facts establishing assumption of risk and contributory negligence. All of these factors must be considered in arriving at a determination of liability or non-liability.

For all the foregoing reasons, transfer is hereby granted and the cause remanded to the trial court for the determination of whether the defendant-inviter exercised reasonable and ordinary care with respect to the condition of the adjacent parking lot.

Reversed and remanded with instructions.

Arterburn, C.J., and DeBruler, J., concur; Givan, J., dissents with opinion in which Prentice, J., concurs.

### DISSENTING OPINION

GIVAN, J.—I respectfully dissent from the majority opinion in this case.

I completely agree with the opinion of the Court of Appeals found at 288 N.E.2d 197.

The majority opinion in this case sees fit to deviate from the weight of authority throughout the country and in so doing is establishing a most difficult responsibility upon the owners of private business parking lots. The rule of law which this opinion overturns has been based upon the realistic recognition that the average person is well aware of such natural hazards as rain, snow and ice; that the accumulation of these elements is readily discernible to the casual observer, and that all persons must proceed with reasonable caution when obviously hazardous conditions prevail. C.J. Hoffman of the Court of Appeals has correctly followed the weight of authority in this and other jurisdictions in this regard.

I would not disturb that decision.

Prentice, J., concurs.

NOTE.—Reported at 311 N.E.2d 821.