# FOR PUBLICATION

ATTORNEYS FOR APPELLANT:

**JOHN A. SMALLEY**
Dyer, Garofalo, Mann & Schultz
Dayton, Ohio

**RYAN C. BECK**
Dyer, Garofalo, Mann & Schultz
Richmond, Indiana

ATTORNEYS FOR APPELLEE:

**LAURA K. BINFORD**
**JAMES O. GIFFIN**
Riley Bennett & Egloff, LLP
Indianapolis, Indiana

FILED
Sep 08 2014, 9:04 am

CLERK
of the supreme court,
court of appeals and
tax court

# IN THE
# COURT OF APPEALS OF INDIANA

| | | |
|---|---|---|
| LORI A. HENDERSON, | ) | |
| | ) | |
| Appellant-Plaintiff, | ) | |
| | ) | |
| vs. | ) | No. 89A04-1311-CT-550 |
| | ) | |
| REID HOSPITAL AND HEALTHCARE SERVICES, | ) | |
| | ) | |
| Appellee-Defendant. | ) | |

APPEAL FROM THE WAYNE SUPERIOR COURT
The Honorable Gregory A. Horn, Judge
Cause No. 89D02-1202-CT-5

**September 8, 2014**

**OPINION - FOR PUBLICATION**

**KIRSCH, Judge**

Lori A. Henderson appeals the trial court's order granting summary judgment in favor of Reid Hospital and Healthcare Services ("the Hospital"). She specifically contends that it was error to grant summary judgment because the trial court utilized the wrong standard when it held that the Hospital did not have a duty to remove the ice that had accumulated on its premises until the freezing fog had ceased and that genuine issues of material fact existed as to whether the Hospital used reasonable care under the circumstances when it cleared its premises of ice.

We reverse and remand.

## FACTS AND PROCEDURAL HISTORY[1]

The Hospital is a non-profit corporation located in Richmond, Indiana, which leased property on its campus to Richmond Cardiology. The salting and plowing of the Hospital's parking lots and grounds is taken care of by the Hospital's engineering department. Pursuant to the Hospital's policies and practices, its security personnel are responsible for notifying the engineering department of snow and/or ice on the Hospital's premises immediately upon discovering any such conditions. If such conditions develop before the maintenance crew from the engineering department have arrived at work for the day, then the maintenance crew members are called at home and told to come in to the Hospital so they can begin removing snow and ice and/or spreading salt and/or calcium chloride on the property. Both salt and calcium chloride are effective in rapidly melting ice and snow.

---

[1] Oral argument was heard on this case on July 15, 2014 in Indianapolis. We commend counsel on the quality of their written and oral advocacy.

On February 22, 2010, no snow, ice, or precipitation of any kind had accumulated on the Hospital's premises. However, at approximately 5:55 a.m. on February 23, 2010, the Hospital's engineering department was notified by its security staff that slick conditions were beginning to develop in the parking lots due to the presence of freezing fog. This was the first report of slick and icy conditions on the property. After being notified, the Hospital's engineering department immediately summoned members of the maintenance crew from their homes. By 6:41 a.m., four members of the maintenance crew were spreading salt and calcium chloride on the parking lots and sidewalks of the Hospital. The Hospital's maintenance crew used two salt trucks and hand spreaders to apply the salt and calcium chloride to the parking lots and sidewalks. By 7:45 a.m. on February 23, 2010, the maintenance crew had spread approximately 3,600 pounds of salt and 2,000 pounds of calcium chloride on the parking lots and sidewalks of the Hospital.

On the morning of February 23, 2010, Henderson drove to her workplace, Richmond Cardiology, which was located on the campus of the Hospital. Henderson typically arrived at work at approximately 7:30 a.m. As she drove into work that morning, Henderson did not notice any ice or slick spots on the roadway. At approximately 7:20 a.m., Henderson parked her vehicle in the parking lot of the Hospital, and as she exited her vehicle, her feet slipped out from under her and she fell. As she was being helped up from the ground by another person, Henderson noticed there was ice on the parking lot where she had stepped when exiting the vehicle. Security personnel went out to the location of Henderson's vehicle at approximately 7:40 a.m. and took photographs of ice on the parking

3

lot near Henderson's vehicle and then notified maintenance that the parking lots were insufficiently salted.

At approximately 7:00 a.m., prior to Henderson's fall, Cathy Fry, one of Henderson's co-workers, left home and began driving to work. When Fry left home, no ice had accumulated on her driveway or on nearby streets, and no precipitation was falling. However, by the time she reached the Hospital approximately ten minutes later, fog was forming and beginning to freeze in the Hospital's parking lot. The maintenance crew was already treating the property when Fry arrived, and one of the Hospital's maintenance vehicles was spreading salt in the area of the parking lot where Fry parked, which is also the same area where Henderson parked.

On February 3, 2012, Henderson filed a complaint against the Hospital, alleging that she was injured in the Hospital's parking lot when she slipped and fell on ice while stepping out of her vehicle, that her injuries were caused by a dangerous and hazardous condition known by the Hospital and that the Hospital was negligent because its parking area was not free from ice. On June 24, 2013, the Hospital filed a motion for summary judgment, claiming that it did not breach its duty of care owed to Henderson. On October 14, 2013, the trial court granted the Hospital's motion for summary judgment, finding that there was no genuine issue of material fact that the Hospital did not breach any duty of care owed to Henderson because the Hospital did not have a reasonable amount of time to remove ice from its premises prior to Henderson's incident. Henderson now appeals.

## DISCUSSION AND DECISION

When reviewing the grant of summary judgment, our standard of review is the same as that of the trial court. *FLM, LLC v. Cincinnati Ins. Co.,* 973 N.E.2d 1167, 1173 (Ind. Ct. App. 2012) (citing *Wilcox Mfg. Grp., Inc. v. Mktg. Servs. of Ind., Inc.*, 832 N.E.2d 559, 562 (Ind. Ct. App. 2005)), *trans. denied.* We stand in the shoes of the trial court and apply a *de novo* standard of review. *Id.* (citing *Cox v. N. Ind. Pub. Serv. Co.,* 848 N.E.2d 690, 695 (Ind. Ct. App. 2006)). Our review of a summary judgment motion is limited to those materials designated to the trial court. Ind. Trial Rule 56(H); *Robson v. Tex. E. Corp.,* 833 N.E.2d 461, 466 (Ind. Ct. App. 2005), *trans. denied.* Summary judgment is appropriate only where the designated evidence shows there are no genuine issues of material fact and the moving party is entitled to judgment as a matter of law. T.R. 56(C). For summary judgment purposes, a fact is "material" if it bears on the ultimate resolution of relevant issues. *FLM,* 973 N.E.2d at 1173. We view the pleadings and designated materials in the light most favorable to the non-moving party. *Id.* Additionally, all facts and reasonable inferences from those facts are construed in favor of the non-moving party. *Id.* (citing *Troxel Equip. Co. v. Limberlost Bancshares,* 833 N.E.2d 36, 40 (Ind. Ct. App. 2005), *trans. denied*).

A trial court's grant of summary judgment is clothed with a presumption of validity, and the party who lost in the trial court has the burden of demonstrating that the grant of summary judgment was erroneous. *Id.* Where a trial court enters specific findings and conclusions, they offer insight into the rationale for the trial court's judgment and facilitate appellate review, but are not binding upon this court. *Id.* We will affirm upon any theory

5

or basis supported by the designated materials. *Id.* When a trial court grants summary judgment, we carefully scrutinize that determination to ensure that a party was not improperly prevented from having his or her day in court. *Id.*

While summary judgment is rarely appropriate in negligence cases because issues of negligence, contributory negligence, causation, and reasonable care are more appropriately left for the determination of a trier of fact, questions of law, like whether a defendant had a duty of care as to a plaintiff or whether certain facts constitute proximate cause, may be appropriate for summary judgment. *Kader v. State of Ind., Dep't of Corr.*, 1 N.E.3d 717, 726 (Ind. Ct. App. 2013). Summary judgment is not generally appropriate in negligence cases because negligence cases are particularly fact sensitive and are governed by a standard of the objective reasonable person, which is "best applied by a jury after hearing all of the evidence." *Rhodes v. Wright*, 805 N.E.2d 382, 387 (Ind. 2004). The tort of negligence has three elements: (1) a duty owed by the defendant to the plaintiff; (2) a breach of that duty; and (3) injury to the plaintiff resulting from the defendant's breach. *Christmas v. Kindred Nursing Ctrs. Ltd. P'ship*, 952 N.E.2d 872, 878 (Ind. Ct. App. 2011). Summary judgment is appropriate if the material evidence negates one of these elements. *Id.*

Under Indiana law, the status of a person when he or she is injured on the premises of another determines the duty owed to that person by the owner of the property. *Winfrey v. NLMP, Inc.*, 963 N.E.2d 609, 612 (Ind. Ct. App. 2012). A person entering the land of another is either a trespasser, a licensee, or an invitee. *Id.* A landowner owes a trespasser the duty to refrain from willfully or wantonly injuring him after discovering his or her

presence and owes a licensee the duty to refrain from willfully or wantonly injuring him or her or acting in a manner to increase his or her peril. *Id.* However, a landowner owes an invitee a duty to exercise reasonable care for the invitee's protection while the invitee is on the landowner's premises. *Id.* "'Under Indiana law, an invitee is a person who goes onto the land of another at the express or implied invitation of owner or occupant either to transact business or for the mutual benefit of invitee and owner or occupant.'" *Id.* (quoting *Markle v. Hacienda Mexican Rest.*, 570 N.E.2d 969, 971 (Ind. Ct. App. 1991)).

A possessor of land is subject to liability for physical harm caused to his invitees by a condition on the land if, but only if, he:

> (a) knows or by the exercise of reasonable care would discover the condition, and should realize that it involves an unreasonable risk of harm to such invitees, and
> (b) should expect that they will not discover or realize the danger, or will fail to protect themselves against it, and
> (c) fails to exercise reasonable care to protect them against the danger.

*Bell v. Grandville Coop., Inc.*, 950 N.E.2d 747, 749 (Ind. Ct. App. 2011) (quoting Restatement (Second) of Torts § 343 (1965)). "[T]he duty of reasonable care owed by an inviter to an invitee should in no way be diminished by the presence of natural accumulations of ice and snow." *Poe v. Tate*, 161 Ind. App. 212, 215, 315 N.E.2d 392, 394 (1974). This is not an "inflexible rule" requiring "a business inviter [to] immediately remove the natural accumulation of ice and snow from his business premises"; instead, it only requires that a duty be imposed upon a landowner to exercise reasonable care in the maintenance of business premises. *Hammond v. Allegretti*, 262 Ind. 82, 88-89, 311 N.E.2d 821, 826 (1974).

7

Henderson argues that the trial court erred in granting summary judgment in favor of the Hospital because she asserts that Indiana courts have incorporated the Connecticut Rule into Indiana jurisprudence, but have still "adhered to the reasonableness standard adopted by the [Indiana] Supreme Court." *Appellant's Br.* at 9. She contends that although Indiana courts have recognized the Connecticut Rule, the courts have consistently analyzed the cases by applying the reasonableness standard from prior cases. Henderson also alleges that no Indiana court has required a storm to cease as a condition precedent to a finding of negligence on the part of a landowner.

The Connecticut Rule originated from a 1925 Connecticut Supreme Court case, which held that "an accumulation of ice or snow upon a common approach to a tenement house may impose upon the landlord a liability for injuries due to it, provided he knew, or in the exercise of a reasonable oversight ought to have known, of the existence of the dangerous condition, and failed to exercise reasonable care to provide against injury by reason of it." *Reardon v. Shimelman*, 128 A. 705, 707 (Conn. 1925). This holding was a rejection of the previously used Massachusetts Rule, which stated that a landlord owed no duty to the tenants to remove naturally accumulated snow and ice from common areas. *Id.* at 706 (citing *Woods v. Naumkeag Steam Cotton Co.*, 134 Mass. 357, 361 (1882)). Contrary to Henderson's contentions that the Connecticut Rule only requires a reasonableness standard, it appears that the Connecticut Supreme Court later modified the rule when it held that "in the absence of unusual circumstances, a property owner, in fulfilling the duty owed to invitees upon his property to exercise reasonable diligence in removing dangerous accumulations of snow and ice, may await the end of a storm and a

8

reasonable time thereafter before removing ice and snow from outside walks and steps," reasoning that "[t]o require a landlord or other inviter to keep walks and steps clear of dangerous accumulations of ice, sleet or snow or to spread sand or ashes while a storm continues is inexpedient and impractical." *Kraus v. Newton*, 558 A.2d 240, 243 (Conn. 1989) (emphasis added). This decision, however, did not foreclose "submission to the jury, on a proper evidentiary foundation, of the factual determinations of whether a storm has ended or whether a plaintiff's injury has resulted from new ice or old ice when the effects of separate storms begin to converge." *Id*. at 243-44.

However, although several Indiana cases have discussed the Connecticut Rule in situations involving whether a landlord or landowner was negligent in his or her removal of accumulations of snow and ice, the Connecticut Rule has not been explicitly adopted as a part of Indiana jurisprudence. *See Orth v. Smedley*, 177 Ind. App. 90, 95, 378 N.E.2d 20, 23 (1978) ("Even assuming, for sake of analysis, that Indiana recognized the so-called Connecticut [R]ule, . . . ."); *see also Rising-Moore v. Red Roof Inns, Inc.*, 368 F. Supp. 2d 867, 874 (S.D. Ind. 2005) (stating that court in *Orth* did not adopt Connecticut Rule *per se*, but followed its reasoning in its analysis), *aff'd*, 435 F.3d 813 (7th Cir. 2006); *Bell*, 950 N.E.2d at 750 (discussing *Orth's* analysis using the Connecticut Rule).

In the present case, the trial court relied on the Connecticut Rule "as the appropriate standard under the facts of this case." *Appellant's App*. at 15. After applying the Connecticut Rule to the present case, the trial court held that "the freezing fog that was causing the ice to accumulate at [the Hospital] had *not yet ceased* at the time of Henderson's fall and [the Hospital], therefore, did not have a reasonable time within which to remove

any ice accumulations." *Id.* (emphasis in original). As we have concluded that the Connecticut Rule, particularly the language requiring the storm or weather condition to cease before there is a duty to remove the accumulated snow or ice, has not been adopted in Indiana jurisprudence, the trial court erred when it relied on it as the appropriate standard to determine if the Hospital breached its duty to Henderson. Even though the trial court utilized the wrong standard in its grant of summary judgment in favor of the Hospital, we stand in the shoes of the trial court and apply a *de novo* standard of review, and we may affirm a trial court's grant of summary judgment upon any theory or basis supported by the designated materials. *FLM*, 973 N.E.2d at 1173.

Several Indiana cases have dealt with the issue of what responsibility a landlord or landowners has to clear areas such as sidewalks and parking lots of natural accumulations of ice and snow. In *Hammond v. Allegretti*, the plaintiff slipped and fell on ice in the private parking lot adjacent to a medical clinic. 262 Ind. at 83-84, 311 N.E.2d at 823. Our Supreme Court reversed the grant of judgment on the evidence in favor of the defendant. 262 Ind. at 92, 311 N.E.2d at 828. In making its determination, the Court rejected prior holdings that found that an owner or occupier of land is under no duty as a matter of law to remove natural accumulations of snow and ice from an open-air parking lot and found such to be "repugnant to the foundational principles of common law occupier's liability." 262 Ind. at 88, 311 N.E.2d at 825-26. The Supreme Court rejected the imposition of an inflexible rule requiring a landowner to immediately remove the natural accumulation of ice and snow from his premises, and instead, concluded that a landowner owes a duty of

reasonable case to an invitee that should in no way be diminished by the presence of natural accumulations of ice and snow. 262 Ind. at 91, 311 N.E.2d at 827-28.

In *Orth v. Smedley*, freezing rain overnight led to an accumulation of ice on a walkway outside of a tenant's apartment, and the tenant slipped and fell on the ice the next morning. 177 Ind. App. at 91-92, 378 N.E.2d at 21. This court, without citing to *Hammond*, affirmed the grant of summary judgment to the landlord, concluding that since the icy conditions developed after midnight, was not detectable by sight, and at 6:00 a.m., when the tenant fell, the landlords and the other tenants, alleged agents of the landlord, were still asleep, the landlords had exercised their duty with the level of care that an ordinary prudent person would exercise under the same or similar circumstances. 177 Ind. App. at 95-96, 378 N.E.2d at 23-24. The court concluded that "[a]n ordinary prudent person would not stand guard over the premises constantly." 177 Ind. App. at 96, 378 N.E.2d at 24. In its analysis, the court stated that the "Connecticut [R]ule recognizes that the landlord is entitled to actual or constructive notice of the presence of ice and snow and is also entitled to reasonable opportunity to remove the ice and snow," but that "the uncontradicted facts in the case at bar show that the [landlords] had neither notice nor opportunity." 177 Ind. App. at 95, 378 N.E.2d at 23.

In *Rossow v. Jones*, 404 N.E.2d 12 (Ind. Ct. App. 1980), a panel of this court, relying on *Hammond*, concluded that "a landlord does have a duty of reasonable care that the common ways and areas, or areas over which he has reserved control, are reasonably fit and that hazards created through a natural accumulation of ice and snow are not beyond the purview of that duty." *Id*. at 14. This court further held that there was sufficient

evidence that the landlord had breached this duty because he had not cleared a stairwell that had been accumulating ice and snow for a week and was well aware of the existence of the snow and ice. *Id.*

In *Rising-Moore v. Red Roof Inns, Inc.*, the United States District Court for the Southern District of Indiana dealt with the issue of duty in the context of a landowner/invitee relationship. There, the plaintiff was driving when a misty rain began to fall, and when it began to freeze on his windshield, he stopped at a hotel. 368 F. Supp. 2d at 868. He parked his vehicle in front of the entrance and walked up a ramp to the front door. *Id.* The plaintiff remained in the lobby for approximately five to twenty minutes, and when he left and began walking back to his vehicle, he slipped and fell on ice that had accumulated on the ramp during the time he was inside. *Id.* at 869. The plaintiff filed a complaint against the hotel alleging that it failed to exercise ordinary and reasonable care to protect its patrons from dangerous conditions on the premises. *Id.* The court held that the hotel did not breach its duty of care owed to the plaintiff because the plaintiff's fall resulted from ice that had accumulated over the course of a short period of time, between five and twenty minutes, and the hotel did not have sufficient knowledge of or opportunity to clear the ice from the premises. *Id.* at 875.

Most recently, this court, in *Bell v. Grandville Cooperative, Inc.*, reversed the grant of summary judgment to the landlord, finding that there was an outstanding question of material fact as to whether the landlord breached its duty to the tenant to maintain the apartment complex premises in a reasonably safe condition. 950 N.E.2d at 754. Because Indiana requires that before a landlord may be liable for failing to correct a hazardous

situation on the premises, including weather-related situations, the landlord must have had either actual or constructive knowledge of the condition and have had sufficient time to correct the condition, this court found that there was question of fact as to whether the landlord had knowledge of the ice accumulation where piles of snow in the area had been melting during the day and re-freezing, creating icy patches, the area where the plaintiff fell was an area where ice regularly formed, and the landlord had been previously alerted to the fact that ice tended to form in the area. *Id*. at 752.

After reviewing the Indiana cases dealing with the responsibility a landlord or landowner has to clear areas such as sidewalks and parking lots of natural accumulations of ice and snow, we conclude that a landlord or landowner has a duty to exercise reasonable care under the circumstances to maintain its business premises, including ensuring that the sidewalks and parking lots are in a reasonably safe condition. This duty includes clearing areas such as sidewalks and parking lots of the natural accumulations of snow and ice. Although we conclude that there is no requirement that the storm or weather condition causing the accumulation of snow or ice cease before this duty attaches, we do recognize that the landlord or landowner is entitled to actual or constructive notice of the presence of snow or ice and a reasonable opportunity to remove it.

Viewing the evidence most favorable to Henderson, the designated evidence showed that, at approximately 5:55 a.m. on February 23, 2010, the Hospital's engineering department was notified by its security staff that slick conditions were beginning to develop in the parking lots due to the presence of freezing fog. This was the first report of slick and icy conditions on the property. After being notified, the Hospital's engineering

13

department immediately summoned members of the maintenance crew from their homes. By 6:41 a.m., four members of the maintenance crew were spreading salt and calcium chloride on the parking lots and sidewalks of the Hospital. The Hospital's maintenance crew used two salt trucks and hand spreaders to apply the salt and calcium chloride to the parking lots and sidewalks, and by 7:45 a.m., they had spread approximately 3,600 pounds of salt and 2,000 pounds of calcium chloride on the parking lots and sidewalks of the Hospital. On that morning, Henderson drove to her workplace, which was located on the campus of the Hospital. She typically arrived at work at approximately 7:30 a.m. As she drove into work that morning, Henderson did not notice any ice or slick spots on the roadway, and at approximately 7:20 a.m., Henderson parked her vehicle in the parking lot of the Hospital. As she exited her vehicle, her feet slipped out from under her and she fell. Security personnel went out to the location of Henderson's vehicle at approximately 7:40 a.m. and took photographs of ice on the parking lot near Henderson's vehicle and notified maintenance that the parking lots were insufficiently salted.

We find both *Orth* and *Rising-Moore* to be distinguishable from the present case. Both of those cases addressed cases where a landlord/landowner did not have actual or constructive knowledge of the particular hazard at issue because of either a sudden change in weather that occurred overnight or ice suddenly formed in a short period of time with very little warning. Here, it is undisputed that the Hospital had actual knowledge of the hazard when it was notified of the slick conditions due to the freezing fog at 5:55 a.m. on February 23. The Hospital then proceeded to call employees in to deal with the situation,

14

and by 6:41 a.m., four members of the maintenance crew were spreading salt and calcium chloride.

Here, the designated evidence did not establish whether the Hospital used reasonable care under the circumstances in its removal of the ice that had accumulated on its parking lot and sidewalks. Nothing in the designated evidence showed that the actions taken by the Hospital were reasonable under industry standards or what such standards even are. The Hospital designated the affidavit of Cook, the director of its engineering department, in which Cook stated that he was familiar with the industry standards, but the affidavit did not state what the standards of reasonable care are in the snow and ice removal industry or whether the Hospital followed such standards on the morning Henderson fell. Based on the evidence designated to the trial court, we cannot say whether the Hospital did or did not use reasonable care in its removal of the ice. "[W]hether there has been a breach of duty in a negligence action generally is a question of fact inappropriate for resolution by summary judgment, unless the facts are undisputed and only one inference can be drawn from those facts." *Bell*, 950 N.E.2d at 753 (citing *N. Ind. Pub. Serv. Co. v. Sharp,* 790 N.E.2d 462, 466 (Ind. 2003)). We do not believe this is such a case. Given the facts most favorable to Henderson stated above, we believe that there are material issues of facts as to whether the Hospital breached its duty to maintain its premises in a reasonably safe condition and to whether it acted reasonably in response to the knowledge of ice accumulation on the parking lots and sidewalks of the premises. We, therefore, reverse the trial court's grant of summary judgment in favor of the Hospital and remand for further proceedings consistent with this opinion.

Reversed and remanded.

BAILEY, J., concurs.

MAY, J., dissents with separate opinion.

# IN THE
# COURT OF APPEALS OF INDIANA

| | | |
|---|---|---|
| LORI HENDERSON, | ) | |
| | ) | |
| Appellant-Plaintiff, | ) | |
| | ) | |
| vs. | ) | No. 89A04-1311-CT-550 |
| | ) | |
| REID HOSPITAL AND HEALTHCARE, | ) | |
| SERVICES, | ) | |
| | ) | |
| Appellee-Defendant. | ) | |
| | ) | |

**MAY, Judge, dissenting with opinion**

The majority is correct that whether a particular act or omission is a breach of duty is generally a question of fact for the jury. *N. Indiana Pub. Serv. Co. v. Sharp*, 790 N.E.2d 462, 466 (Ind. 2003). But it can be a question of law where the facts are undisputed and only a single inference can be drawn from those facts. *Id.* This is such a case. Only a single inference -- that the Hospital exercised reasonable care -- can be drawn from the undisputed facts. The Hospital was therefore entitled to summary judgment and I must respectfully dissent.

I can draw no inference from the undisputed facts before us except that the Hospital did everything it could do to deal with the weather on the morning in question. The Hospital learned a little before 6:00 a.m. that freezing fog was causing slick conditions to develop. It immediately called its maintenance crew members at home and directed them

17

to come to the parking lot and clear it of ice and snow.  By 6:41 a.m. -- about forty minutes before Henderson arrived at the Hospital -- the crew was working on the parking lot and sidewalks.  By 7:45 a.m., the crew had spread almost three tons of salt and calcium chloride on the parking lots and sidewalks.

With respect to winter storms, Indiana does not require immediate removal of snow or ice.  *Rising-Moore v. Red Roof Inns, Inc.*, 435 F.3d 813, 817 (7th Cir. 2006) (citing *Hammond,* 262 Ind. at 88, 311 N.E.2d 821).  Although a week is too long to wait, action taken within shorter times (such as at daybreak during a storm, or soon after a storm ends) has been treated as reasonable diligence.  *Id*. (citing *Orth,* 177 Ind. App. 90, 378 N.E.2d 20, 23.

In *Rising-Moore*, Red Roof Inns did not wait a week, or even overnight.  Rising-Moore slipped just outside the lobby door of a Red Roof Inn during a sleet storm.  He had been driving late at night from Indianapolis to his home in Bloomfield when bad weather led him to stop at the motel rather than complete the journey.  It was unclear whether Rising-Moore had experienced icing conditions on the road or just expected to encounter them before reaching home.  He said the ramp between the lobby door and the parking lot was ice-free when he arrived, but it became slick in the fifteen minutes he was in the office to register for a room.  He fell, and sued Red Roof.  The Seventh Circuit affirmed summary judgment for Red Roof:  "Only a duty of continuous monitoring and clearing during a winter storm would make an owner liable under these circumstances, and there is no such duty in Indiana." *Id*.

18

The Hospital called employees in early and had them dealing with the slick conditions within one hour of learning the conditions were developing. I believe the Hospital did all it could do, which permits no inference other than that the Hospital exercised reasonable care. As the Supreme Judicial Court of Massachusetts explained long ago,

> [i]n cases of defects from snow and ice, what is reasonable must depend upon the kind and severity of storms, their duration, the extent to which all the ways in a town are rendered unsafe for travel, the labor required to render them safe, the number of men available for the work, the number employed, and the diligence with which the work is prosecuted. . . . *[I]f the town does all that it can, with all the men and means it can procure, to render the ways safe, exercising reasonable discretion as to the order in which the work is done in reference to the importance of the ways, it would seem to be doing all that reasonable care and diligence require, though some defects are allowed to continue while others are being remedied.*

*Hays v. City of Cambridge*, 136 Mass. 402, 403 (1884) (emphasis added).

I would affirm the summary judgment for the Hospital and, therefore, I respectfully dissent.