# MEMORANDUM DECISION

Pursuant to Ind. Appellate Rule 65(D), this Memorandum Decision shall not be regarded as precedent or cited before any court except for the purpose of establishing the defense of res judicata, collateral estoppel, or the law of the case.



**FILED**

Aug 04 2015, 8:49 am

*Kevin S. Smith*

**CLERK**
of the supreme court,
court of appeals and
tax court

ATTORNEY FOR APPELLANT

Stacy K. Newton
Jackson Kelly PLLC
Evansville, Indiana

ATTORNEYS FOR APPELLEE
SOUTH SPENCER SCHOOL
CORPORATION

Crystal G. Rowe
Kightlinger & Gray, LLP
New Albany, Indiana

Krystal Lechner
Kightlinger & Gray, LLP
Evansville, Indiana

ATTORNEYS FOR APPELLEE
CLIFF HAGAN'S BOYS' CLUB

Danny E. Glass
John J. Kreighbaum
Fine & Hatfield
Evansville, Indiana

# IN THE
# COURT OF APPEALS OF INDIANA

| | |
|---|---|
| Grant Johnson, Minor Child, by his Mother and Father, Don Johnson and Janice Johnson, <br><br> *Appellants-Plaintiffs,* <br><br> v. <br><br> South Spencer School Corporation and Cliff Hagan's | August 4, 2015 <br><br> Court of Appeals Case No. 74A04-1501-PL-16 <br><br> Appeal from the Spencer Circuit Court <br><br> The Honorable Jonathan A. Dartt, Judge <br><br> Cause No. 74C01-1205-PL-284 |

Boys' Club of Owensboro,
Kentucky, Inc.,

*Appellees-Defendants*

**Baker, Judge.**

Grant Johnson (Grant), by his mother, Janice Johnson (Janice), and his father, Don Johnson (Don), appeals the trial court's order granting summary judgment in favor of South Spencer School Corporation (the School) and Cliff Hagan's Boys' Club of Owensboro, Kentucky (Boys' Club). The Johnsons filed a complaint against the School and the Boys' Club for negligence stemming from multiple instances of verbal and physical bullying by other students against Grant. The trial court found that there were no genuine issues of material fact and that the School and the Boys' Club were entitled to judgment as a matter of law. We disagree, finding issues of material fact rendering summary judgment inappropriate. We reverse and remand for further proceedings.

## Facts

Grant was a second grade student at Rockport Elementary School during the 2010-11 school year and a third grade student during the 2011-12 school year. During recess times at school, one teacher and one teacher's aide were assigned to monitor three classes of students on the playground, which generally equated to approximately 60 students.

# Second Grade: At School

From August 2010 through February 2011, Grant was allegedly bullied by Preston, a classmate. Specifically, Preston frequently called Grant names and hit him. Janice and Don spoke with Grant's teacher and Scot French, the school principal, regarding these incidents. The Johnsons allege that Preston picked on Grant on a daily basis.

In February 2011, as Grant's class was lining up to go inside after recess, Preston turned around and scratched Grant on the face. Grant has a scar on his face as a result of the incident. Grant reported the incident to his teacher, who told him he should have reported it to the recess teacher. Janice also spoke with French about the altercation.

In March 2011, Preston grabbed Grant's arm and squeezed his fingernails into Grant. Janice reported the incident to French, who followed up with the boys. Preston admitted to the allegation. French made Preston apologize to Grant, took away Preston's recess for a week, and told the boys they were not allowed to play together for the remainder of the school year. The boys were also physically separated in their classroom and were not permitted to stand in line together.

During that same period of time, Sebastien, another classmate, frequently stole items out of Grant's backpack. When Grant reported the thefts to his teacher, she demanded proof of the theft. Grant subsequently felt that his teacher did not trust him, so he stopped telling her when things happened to him.

## Second Grade: At Boys' Club

The Boys' Club, an entity entirely separate from the School, ran the after school care program that Grant attended. During the after school program, multiple kids frequently called Grant "fat" and "gay." Grant reported the harassment to employees of the Boys' Club, who advised Grant to ignore the name-calling.

At some point during second grade, Jarron, a fifth grade student, picked up Grant's handheld Nintendo DS and refused to give it back to Grant. The boys argued over the DS, Jarron continued to refuse to return the DS to grant, and the DS got broken during the struggle. Grant began crying and reported the incident to Boys' Club employees, who made Jarron sit in time out.

In May 2011, Grant and Myah, a fifth-grade student, were playing jump rope together. A Boys' Club employee observed Myah "pull the rope around [Grant's] neck maliciously." Appellants' App. p. 247. Grant was left with a rope burn around his neck, and received medical treatment as a result of the incident.

## Third Grade: At School

In August 2011, during recess, Grant had given a Pokemon card to a friend to hold. Preston took the card and refused to return it. Grant and another student approached Preston to retrieve the card. Preston grabbed Grant on the wrist, causing bruising, and Grant pushed Preston. Janice reported the incident to Grant's teacher. Grant and Preston had been deliberately assigned to different

third grade classrooms; after this incident, they were instructed to stay away from each other during recess.

## Third Grade: At Boys' Club

[11] In September 2011, at the after school program, Grant was swinging on a swingset when Desmond, a fifth grade student, pulled Grant's leg. This action caused Grant to spin and repeatedly hit the poles, causing severe bruising to his legs. Desmond was one of the students who repeatedly called Grant "fat" and "gay" on a near-daily basis.

[12] After the incident on the swings, the Johnsons decided that the School was no longer a safe place for Grant. They transferred him to a private school in the middle of his third grade year.

[13] On May 24, 2012, the Johnsons filed a complaint against the School and the Boys' Club for negligence. On December 12, 2013, the School filed a motion for summary judgment, and on August 12, 2014, the Boys' Club filed a motion for summary judgment. The trial court summarily granted both motions on December 16, 2014. The Johnsons now appeal.

## Discussion and Decision

## I. Standard of Review

[14] Our standard of review on summary judgment is well established:

> We review summary judgment de novo, applying the same standard as the trial court: "Drawing all reasonable inferences in favor of . . . the

non-moving parties, summary judgment is appropriate 'if the designated evidentiary matter shows that there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law.' " *Williams v. Tharp,* 914 N.E.2d 756, 761 (Ind. 2009) (quoting T.R. 56(C)). "A fact is 'material' if its resolution would affect the outcome of the case, and an issue is 'genuine' if a trier of fact is required to resolve the parties' differing accounts of the truth, or if the undisputed material facts support conflicting reasonable inferences." *Id.* (internal citations omitted).

The initial burden is on the summary-judgment movant to "demonstrate [ ] the absence of any genuine issue of fact as to a determinative issue," at which point the burden shifts to the non-movant to "come forward with contrary evidence" showing an issue for the trier of fact. *Id.* at 761–62 (internal quotation marks and substitution omitted). And "[a]lthough the non-moving party has the burden on appeal of persuading us that the grant of summary judgment was erroneous, we carefully assess the trial court's decision to ensure that he was not improperly denied his day in court." *McSwane v. Bloomington Hosp. & Healthcare Sys.,* 916 N.E.2d 906, 909–10 (Ind. 2009) (internal quotation marks omitted).

*Hughley v. State*, 15 N.E.3d 1000, 1003 (Ind. 2014).

[15] Our Supreme Court has very recently cautioned that "[a]s long as competent evidence has been designated in response to a summary judgment motion, . . . 'weighing [the evidence]—no matter how decisively the scales may seem to tip—[is] a matter for trial, not summary judgment.'" *Stafford v. Szymanowski*, 31 N.E.3d 959, 963 (Ind. 2015) (quoting *Hughley*, 15 N.E.3d at 1005-06). In other words, if *any* weighing of evidence—of the facts—is required, then summary judgment is inappropriate.

[16] It is well accepted that "[u]nder Indiana summary judgment procedure, a nonmovant is not required to come forward with contrary evidence until the

party seeking summary judgment demonstrates the absence of a genuine issue of material fact." *Kennedy v. Murphy*, 659 N.E.2d 506, 508 (Ind. 1995). In other words, "[m]erely alleging that the plaintiff has failed to produce evidence on each element [of a cause of action] is insufficient to entitle the defendant to summary judgment under Indiana law." *Deuitch v. Fleming*, 746 N.E.2d 993 (Ind. Ct. App. 2001).

## II. Cross-Appeal

[17] The School raises one argument on cross-appeal, which is that the trial court improperly considered certain supplemental evidence designated by the Johnsons in response to the School's summary judgment motion. In responding to the School's summary judgment motion, the Johnsons timely filed a brief and a volume of exhibits. A designation of specific facts that the Johnsons believed supported a denial of summary judgment was included in their brief. Specifically, the brief referred to specific pages contained in multiple depositions. The volume of exhibits inadvertently omitted some of those depositions, as the first draft of the document was completed before all depositions were complete. When the Johnsons became aware of the omission, they filed a supplemental volume of exhibits. The School had copies of all of the depositions before the brief was filed, and no new testimony from those depositions was designated other than that already cited in the brief.

[18] We see no reason to conclude that the trial court should have declined to consider the Johnsons' supplemental designation of evidence. The error was

inadvertent and the School suffered no prejudice as a result. Therefore, we move on to consider the appeal.

# III. Negligence

To prove a negligence claim, a plaintiff must show that (1) the defendant owed plaintiff a duty, (2) the defendant breached that duty, and (3) plaintiff's injury was proximately caused by the breach. *Winfrey v. NLMP, Inc.*, 963 N.E.2d 609, 612 (Ind. Ct. App. 2012). Whether a defendant owes a duty of care to a plaintiff is a question of law for the court to decide. *Id.* To determine whether a duty exists, we must consider the relationship between the parties, the reasonable foreseeability of harm to the person injured, and public policy concerns. *Yost v. Wabash College*, 3 N.E.3d 509, 515 (Ind. 2014). "Summary judgment is rarely appropriate in negligence cases because they are particularly fact-sensitive and are governed by a standard of the objective reasonable person, which is best applied by a jury after hearing all the evidence." *Kramer v. Catholic Charities of Diocese of Fort Wayne-S. Bend, Inc.*, 32 N.E.3d 227, 231 (Ind. 2015).

# A. Duty

The School and the Boys' Club both concede that they owed Grant a duty of care during school hours and after-school hours, respectively. All parties agree that *Miller v. Griesel*, 261 Ind. 604, 308 N.E.2d 701 (Ind. 1974), controls. The *Miller* Court held that there is "a duty for school authorities to exercise reasonable care and supervision for the safety of the children under their control. . . . [T]he relationship of school pupils and school authorities should

call into play the well recognized duty in tort law that persons entrusted with children . . . have a special responsibility recognized by the common law to supervise their charges." *Id.* at 611, 308 N.E.2d at 706. This duty may, in some instances, require the school "to anticipate and guard against conduct of children by which they may harm themselves or others." *Id.* at 612, 308 N.E.2d at 706. The *Miller* Court also cautioned, however, that "schools are not intended to be insurers of the safety of their pupils, nor are they strictly liable for any injuries that may occur to them." *Id.*

[21] In this case, therefore, it can be held as a matter of law that the School and the Boys' Club owed a duty "to exercise ordinary and reasonable care for the safety of" Grant while he was in their care. *Id.*

## B. Breach

[22] Next, we turn to the issue of breach of duty. Whether there has been a breach of duty in a negligence action is generally a question of fact that is inappropriate for resolution by summary judgment. *Henderson v. Reid Hosp. and Healthcare Servs.*, 17 N.E.3d 311, 320 (Ind. Ct. App. 2014), *trans. denied*. Only if all facts are undisputed and only one inference can be drawn from those facts can the issue of breach of duty be decided on summary judgment as a matter of law. *Id.*

[23] In this case, there are a number of incidents and ongoing behaviors that form the basis of the Johnsons' complaint, as well as actions taken by School officials and Boys' Club employees in response:

- Ongoing name-calling during both school and after-school hours.
  - Janice states that she reported the name-calling to School and Boys' Club officials. They deny receiving any such information, so no action was taken.
- At school in February 2011, Preston scratched Grant in the face, leaving a scar.
  - In response, Grant's second grade teacher spoke to the class about getting along and being nice to one another. She spoke with Preston and Grant about proper behavior, reviewed the school behavior plan, and took one recess away from Preston.
- At school in March 2011, Preston grabbed Grant's arm and squeezed with his fingernails.
  - In response, French followed up with the students. Preston admitted the allegations. French made Preston apologize, took away one week of recess, and told the boys they could not play together for the rest of the school year.
  - Grant and Preston were also separated in the classroom and were not permitted to stand in line together. Their teacher worked with the class on thinking before reacting.
- After school in May 2011, Myah pulled a jump rope around Grant's neck in a malicious manner.
  - In response, the Boys' Club supervisor who observed the incident notified Janice.
- During the 2010-11 school year, Sebastien stole items out of Grant's backpack.
  - In response, Grant's teacher demanded proof before searching a particular backpack. She would tell the whole class that if the missing item showed up, the class would get to have its last recess period. Frequently, the item would then be "found." The teacher instructed the children not to steal from each other.
  - Eventually, the teacher forbade the children from bringing outside toys to school.
- After school during the 2010-11 school year, Jarron broke Grant's Nintendo DS.
  - In response, Boys' Club employees made Jarron sit in time out.

- During school in August 2011, Preston refused to return a Pokemon card to Grant and grabbed Grant on the wrist, causing bruising.
  - In response, French spoke with the boys, who admitted to the altercation. French stated that the boys could not play together during the new school year.
- After school in September 2011, Desmond pulled Grant's legs while Grant was swinging, causing severe bruising to Grant's legs.
  - In response, the Boys' Club director spoke to his staff, but they had not written up the incident because Grant did not report it at the time it occurred.

Neither the School nor the Boys' Club took any remedial action with respect to the student to teacher ratio during recess time or after-school hours. Additionally, neither entity took any steps with respect to the verbal abuse Grant was allegedly receiving on an ongoing basis.

[24] There is a genuine issue of material fact regarding whether the School and the Boys' Club were aware of the ongoing name-calling. Moreover, while the School and the Boys' Club addressed issues as they occurred, reasonable factfinders could differ as to whether the actions they took went far enough to meet a standard of reasonable and ordinary care. In other words, we believe that the factfinder should resolve the question of whether the School and the Boys' Club breached their duty of care to Grant by failing to take additional, remedial actions when it became apparent that there was an ongoing problem, and/or by failing to provide adequate supervision. We express no opinion about whether a breach actually occurred; instead, we merely find that issues of fact remain that render this case inappropriate for resolution by summary judgment.

# C. Causation

The final element of a negligence claim is causation. The defendant's conduct is the proximate cause of a plaintiff's injury when the injury is "the natural and probable consequence of the negligent act which, in light of the attending circumstances, could have been reasonably foreseen or anticipated." *Arnold v. F.J. Hab, Inc.*, 745 N.E.2d 912, 917 (Ind. Ct. App. 2001). Summary judgment is almost always inappropriate on the issue of proximate cause. *Florio v. Tilley*, 875 N.E.2d 253, 255 (Ind. Ct. App. 2007). If, however, a case is plain and undisputable, and only a single inference or conclusion may be drawn from the evidence, the question of proximate cause may be determined as a matter of law. *Miller v. Bernard*, 957 N.E.2d 685, 697 (Ind. Ct. App. 2011).

Similar to the element of breach of duty, we find that whether the injuries suffered by Grant were the natural and probable consequences of the School's and Boys' Club's failure to take further, remedial actions, and/or by failure to provide adequate supervision, is best answered by a trier of fact. We cannot find that there is only a single inference or conclusion to be drawn from the evidence in this record.[1]

We emphasize, again, our Supreme Court's recent reminder "[a]s long as competent evidence has been designated in response to a summary judgment

---

[1] As with the element of breach, we express no opinion on whether any alleged breach of duty was the proximate cause of Grant's injuries. We merely find that the issue should be resolved by a factfinder.

motion, . . . 'weighing [the evidence]—no matter how decisively the scales may seem to tip—[is] a matter for trial, not summary judgment.'" *Stafford*, 31 N.E.3d at 963 (quoting *Hughley*, 15 N.E.3d at 1005-06). Bearing that in mind, we can only find in this case that the trial court erred by granting summary judgment in favor of the School and the Boys' Club on the Johnsons' complaint.

[28] The judgment of the trial court is reversed and remanded for further proceedings.

Najam, J., and Robb, J., concur.