FILED

Dec 07 2020, 8:50 am

CLERK
Indiana Supreme Court
Court of Appeals
and Tax Court



ATTORNEYS FOR APPELLANTS

James A. Nickloy
Craig C. Siebe
Nickloy & Barry LLP
Noblesville, Indiana

ATTORNEYS FOR APPELLEE
CITY OF NOBLESVILLE

Bryan H. Babb
Jonathan W. Hughes
Bose McKinney & Evans LLP
Indianapolis, Indiana

Michael A. Howard
Noblesville, Indiana

ATTORNEYS FOR APPELLEE
KACE, LLC

David A. Given
Matthew C. Olsen
Faegre Drinker Biddle Reath
LLP
Indianapolis, Indiana

# IN THE
# COURT OF APPEALS OF INDIANA

| | |
|---|---|
| Dennis Millikan and Vicki Millikan, *Appellants-Plaintiffs,* | December 7, 2020 |
| | Court of Appeals Case No. 20A-PL-1061 |
| v. | Appeal from the Hamilton Circuit Court |
| City of Noblesville and KACE, LLC, *Appellees-Defendants.* | The Honorable Paul A. Felix, Judge |
| | Trial Court Cause No. 29C01-1812-PL-11935 |

**Kirsch, Judge.**

[1] Dennis Millikan ("Dennis") and Vicki Millikan (together, "the Millikans") appeal the trial court's grant of summary judgment in favor of the City of Noblesville ("Noblesville") and KACE, LLC ("Kace") (together, "the City") and denial of their motion for summary judgment regarding the Millikans' action to quiet title in property they claimed to have adversely possessed. The Millikans raise the following issue for our review: whether the trial court erred in granting summary judgment in favor of the City and in denying the Millikans' motion for summary judgment because the Millikans assert that the designated evidence showed that they had substantially complied with Indiana Code section 32-21-7-1(a) in that they had a reasonable and good faith belief that they were paying the taxes on the disputed property.

[2] We reverse and remand.

## Facts and Procedural History

[3] From 1972 until 2018, the Millikans owned and lived on property located at 17309 Willowview Road, Noblesville, Indiana ("the Millikan Property"). *Appellant's App. Vol. II* at 23, 25. The entire northern boundary of the Millikan Property was bordered by a Conrail railroad right of way that is approximately fifty feet in width, north to south. *Id*. at 23. To the north of the railroad right of way and the Millikan Property is the Park 32 West subdivision; Lot 5 of the Park 32 West subdivision and the Millikan Property were divided by the

railroad right of way. *Id.* The action from which this appeal arose concerned a portion of the railroad right of way; specifically, the rectangular portion that extends twenty-five feet north from the centerline of the former railroad tracks and 277 feet west from Willowview Road (the "Disputed Property"). *Id.* at 23, 25, 27, 72.

[4] The plat for the Park 32 West subdivision was recorded in 1978. *Id.* at 74. Lot 5 is in the southeast corner of Park 32 West, and directly north of the Millikan Property divided by the old railway line. *Id.* Kace acquired Lot 5 in 2011, from Maggie Investments, LLC, and Maggie Investments, LLC acquired Lot 5 in 2004 from Ronald and Pamela Kinsey. *Id.* at 37, 62-63.

[5] By 1982, Conrail had abandoned the railway and the right of way that ran between the Millikan Property and Lot 5. *Id.* at 23. The Millikans began to exercise control over the railroad right of way in 1982 when Dennis personally removed the rails, ties, and stone that formed the railroad track. *Id.* at 23-24, 35, 39. Dennis used many of the wooden railroad ties to build the backstop of a shooting range that ran from south to north on the Millikan property, and the backstop made use of the natural berm upon which the railroad had run. *Id.* at 24-25.

[6] The Millikans cut down the hedgerow on the Disputed Property and planted grass and a row of evergreen trees. *Id.* at 23, 32-34, 35, 39. For the next thirty-three years, the Millikans watered, fertilized, and mowed the grass on the

Disputed Property, and raked leaves, trimmed and cared for the trees they had planted. *Id*. at 24, 35, 37, 38, 39. When Dennis mowed the Millikan Property, he also mowed the Disputed Property so that the grass was always the same length and appeared to be one, continuous yard. *Id*. at 24, 32-34, 35, 39. Nobody other than the Millikans ever mowed or maintained the Disputed Property between 1982 and 2016. *Id*. at 24, 36, 37, 38, 39. The Millikans' neighbors, including a previous owner of the Kace property, recognized the Disputed Property as belonging to the Millikans. *Id*. at 35-36, 37, 39-40.

[7] On November 6, 1991, the Millikans recorded an "Affidavit In Support Of Vesting Interest In Abandoned Railroad Right Of Way" ("the 1991 Affidavit") with the Hamilton County Recorder. *Id*. at 24, 27-29. The 1991 Affidavit contained a legal description that included the entire railroad right of way that bordered the Millikan Property, including the Disputed Property. *Id*. at 24. The 1991 Affidavit claimed that the Millikans owned the Disputed Property in fee simple but that a deed containing a complete description of the railroad right of way was not known to exist. *Id*. at 27-29. The 1991 Affidavit also stated that the Millikans' real estate was adjacent to and along the south side of the railroad right of way and that the railroad right of way was abandoned. *Id*. It further stated that the Millikans made the affirmations contained in the 1991 Affidavit for the purpose of establishing vested title in the railroad right of way,

including the Disputed Property, pursuant to Indiana Code section 8-4-35-5[1] and then reiterated the legal description of the entire railroad right of way. *Id.* Under this statue, the Millikans received title to the southern portion of the railroad right of way but not the Disputed Property. Ind. Code § 8-4-35-5 (now Ind. Code § 32-23-11-10). The Recorder's Office stamped the 1991 Affidavit as "duly entered for taxation." *Id.* at 24, 27.

[8] No property taxes were ever assessed on the Disputed Property. *Id.* at 24, 49, 51. Drainage assessments were assessed on the Disputed Property for the years 2009-2015, payable in the years 2010-2016, but there were no special assessments payable on the Disputed Property for the years 2000-2009. *Id.* at 145. No designated evidence was presented addressing the existence or nonexistence of special assessments on the Disputed Property prior to the year 2000. The Millikans paid property taxes and special assessments due on the Millikan Property. *Id.* at 135-36. Noblesville was listed as the owner of record of the Disputed Property as the result of a 1991 quitclaim deed from White River, Noblesville, and Westfield Railroad, Inc. *Id.* at 178-79. Noblesville was

---

[1] The current version of this statute is found as Indiana Code section 32-23-11-10 and states in pertinent part:

> (b) If a railroad abandons its right to a railroad right-of-way, the railroad's interest vests in the owner of the right-of-way fee with a deed that contains a description of the real property that includes the right-of-way.

> (c) If a deed described in subsection (b) does not exist, then the railroad's interest vests in the owner of the adjoining fee. The interest of the railroad that vests in the owner of the adjoining fee is for the part of the right-of-way from the center line of the right-of-way to the adjoining property line.

aware that the quitclaim deed conveyed nothing because the grantor had no ownership interest in the Disputed Property. *Id*. at 176. Despite this knowledge, Noblesville paid the drainage assessments on the Disputed Property that were payable in the years 2010-2016. *Id*. at 145.

[9] In approximately 2014, Noblesville began showing interest in acquiring the old railroad right of way for use as the Midland Trace Trail. *Id*. at 25. On August 7, 2014, Dennis attended a public hearing on the issue at Hazel Dell Elementary School where he informed the Noblesville City Engineer that the Millikans owned the entire railroad line property that ran along the northern border of the Millikan Property. *Id*. When Noblesville ordered an appraisal of the railroad right of way, Dennis met with the appraiser on September 30, 2015 and told him that the Millikans owned the Disputed Property, which the appraiser noted in his report to Noblesville. *Id*. at 25, 43. Despite this knowledge of the Millikans' claim of ownership, Noblesville entered into an agreement with Kace, by which Kace was to transfer title to a portion of the Disputed Property to Noblesville. *Id*. at 25, 44-48, 49-50, 86-90. On December 15, 2015, Kace signed a Warranty Deed transferring title to a portion of the Disputed Property to Noblesville and retaining a strip on the north side of what it sold to Noblesville that was approximately five feet in width and 277 feet in length. *Id*. at 86-90. Kace never, at any point in time, maintained or used any portion of the Disputed Property. *Id*. at 24-25.

In July of 2016, Noblesville filed a condemnation action to acquire a portion of the south half of the railroad right of way from the Millikans. *Id*. at 25. Noblesville and the Millikans eventually settled the condemnation action, and Noblesville acquired the portion of the south half of the old railroad right of way that it sought for the Midland Trace Trail. *Id*. at 26. Even after the Midland Trace Trail was completed, Kace did not mow the grass on the portion of the Disputed Parcel to the north of the trail, allowing that strip of property to become overgrown. *Id*. at 25, 80.

On December 14, 2018, the Millikans filed their complaint for title by adverse possession and trespass against the City. *Id*. at 4. The Millikans filed their first amended complaint on December 28, 2018. *Id*. at 5. On March 1, 2019, the Millikans filed a motion to dismiss the claim of trespass from the complaint, which the trial court granted on March 4, 2019, leaving a single claim for title by adverse possession. *Id*. at 6.

On November 5, 2019, the Millikans filed their motion for summary judgment as to their claim for title by adverse possession, along with designated evidence. *Id*. at 18-110. Noblesville filed its response on January 13, 2020, along with its designated evidence, which Kace joined. *Id*. at 111-56. The Millikans filed their reply to the City's response and a motion for leave to file supplemental designation of evidence on January 23, 2020. *Id*. at 157-68. The trial court granted the Millikans' motion for leave to file supplemental designation of

evidence on January 24, 2020. *Id*. at 192. On March 10, 2020, the trial court held a hearing on the Millikans' motion for summary judgment. *Id*. at 191.

[13] On March 16, 2020, the trial court issued its order denying the Millikans' motion for summary judgment and granting summary judgment to the City. *Id*. at 13-15. In the order, the trial court found that the Millikans had satisfied "the common law elements of adverse possession to the Disputed Property," but that they "failed to prove they have substantially complied with the requirements of [Indiana Code section 32-21-7-1], which requires an adverse claimant to have a reasonable and good faith belief that [they] paid the Special Assessments due during the period of adverse possession." *Id*. at 13. The Millikans filed a motion to correct error on March 25, 2020, in which they pointed out that title had irreversibly vested in them many years before any special assessments were assessed against the Disputed Property. *Id*. at 193-95. On April 14, 2020, Noblesville filed its motion to deny the motion to correct error, which Kace joined. *Id*. at 199-205. The Millikans filed a reply on April 16, 2020. *Id*. at 206-09. On April 27, 2020, the trial court denied the Millikans' motion to correct error. *Id*. at 16-17. The Millikans now appeal.

## Discussion and Decision

[14] When reviewing the grant or denial of a motion for summary judgment, we apply the same standard as the trial court: whether there is a genuine issue of material fact and whether the moving party is entitled to judgment as a matter of law. *Anonymous Dr. A v. Foreman*, 127 N.E.3d 1273, 1276 (Ind. Ct. App.

2019) (citing *Monroe Guar. Ins. Co. v. Magwerks Corp.*, 829 N.E.2d 968, 973 (Ind. 2005)). We stand in the shoes of the trial court and apply a de novo standard of review. *FLM, LLC v. Cincinnati Ins. Co.*, 973 N.E.2d 1167, 1173 (Ind. Ct. App. 2012) (citing *Cox v. N. Ind. Pub. Serv. Co.*, 848 N.E.2d 690, 695 (Ind. Ct. App. 2006)). Our review of a summary judgment ruling is limited to those materials designated to the trial court. Ind. Trial Rule 56(H); *Thornton v. Pietrzak*, 120 N.E.3d 1139, 1142 (Ind. Ct. App. 2019), *trans. denied*. Summary judgment is appropriate only where the designated evidence shows there are no genuine issues of material fact and the moving party is entitled to judgment as a matter of law. T.R. 56(C). For summary judgment purposes, a fact is "material" if it bears on the ultimate resolution of relevant issues. *FLM*, 973 N.E.2d at 1173. We view the pleadings and designated materials in the light most favorable to the non-moving party. *Id*. Additionally, all facts and reasonable inferences from those facts are construed in favor of the non-moving party. *Id*. (citing *Troxel Equip. Co. v. Limberlost Bancshares*, 833 N.E.2d 36, 40 (Ind. Ct. App. 2005), *trans. denied*). The initial burden is on the moving party to demonstrate the absence of any genuine issue of fact as to a determinative issue, at which point the burden shifts to the non-movant to come forward with contrary evidence showing an issue for the trier of fact. *Hughley v. State*, 15 N.E.3d 1000, 1003 (Ind. 2014).

[15] A trial court's grant of summary judgment is clothed with a presumption of validity, and the party who lost in the trial court has the burden of

demonstrating that the grant of summary judgment was erroneous. *Henderson v. Reid Hosp. and Healthcare Servs.*, 17 N.E.3d 311, 315 (Ind. Ct. App. 2014), *trans. denied*. We will affirm upon any theory or basis supported by the designated materials. *Id*. When a trial court grants summary judgment, we carefully scrutinize that determination to ensure that a party was not improperly prevented from having his or her day in court. *Id*.

[16] The Millikans argue that the trial court erred when it granted summary judgment in favor of the City and denied the Millikans' motion for summary judgment. The Millikans assert that they obtained title of the Disputed Property through adverse possession because, in addition to satisfying the common law requirements of adverse possession as the trial court found, they also satisfied Indiana Code section 32-21-7-1(a). They contend that they openly maintained exclusive possession and control of the Disputed Property for a twenty-seven-year period prior to there being any evidence of special assessments being due on the Disputed Property and that they were not required to pay special assessments that did not exist during that twenty-seven-year time period. Therefore, they maintain they had already obtained title to the Disputed Property before the special assessments were even assessed.[2] The

---

[2] The City argues that this argument is waived because the Millikans raised it for the first time in their motion to correct error. We disagree. Although the Millikans may have more clearly stated their issue in their motion to correct error, it does appear that they had raised the issue in their summary judgment motion that they had satisfied Indiana Code section 32-21-7-1(a) prior to when the drainage assessments were assessed. Specifically, in their summary judgment brief and their reply to the City's response to the motion for summary judgment, the Millikans argued that they began to exercise control over the Disputed Property in

Millikans further argue that, even if they were required to comply with Indiana Code section 32-21-7-1(a) after the ten-year possessory period ended, they satisfied the statute's good faith requirement because they recorded the 1991 Affidavit claiming ownership of the Disputed Property and the Recorder's Office marked that affidavit as "duly entered for taxation," which they reasonably believed had evidenced they were taking responsibility for the Disputed Property for tax purposes and that their annual property tax bill would include any special assessments that were due on the Disputed Property.

[17] "'[T]he doctrine of adverse possession entitles a person without title to obtain ownership to a parcel of land upon clear and convincing proof of control, intent, notice, and duration[.]'" *Hardin v. McClintic*, 125 N.E.3d 643, 651 (Ind. Ct. App. 2019) (quoting *Fraley v. Minger*, 829 N.E.2d 476, 486 (Ind. 2005)). There are four traditional elements to adverse possession at common law: control, intent, notice, and duration. *Bonnell v. Cotner*, 50 N.E.3d 361, 364 (Ind. Ct. App. 2016) (citing *Fraley*, 829 N.E.2d at 486). "The requisite period of time for adverse possession is ten years." *Celebration Worship Ctr., Inc. v. Tucker*, 35 N.E.3d 251, 254 (Ind. 2015). Here, the trial court found that the Millikans

---

1982 and that the Disputed Property was not subject to taxes or assessments and none were due. *Appellant's App. Vol. II* at 94, 99, 159-62. They argued in several places that they had obtained title before the assessments were due. *Id.* at 95, 97, 98, 101, 158, 159, 161. They further argued that their filing of the 1991 Affidavit invited taxation, and because it was filed well before any assessments were due on the Disputed Property, this assertion supported that the Millikans were arguing that they had satisfied the statute before the assessments were due. *Id.* at 95, 97, 98-99, 158, 161.

satisfied these common law elements of adverse possession, *Appellant's App. Vol. II* at 13, and the City does not dispute that the Millikans have established all of these elements with respect to the Disputed Property. Instead, the trial court found that the Millikans did not satisfy Indiana Code section 32-21-7-1(a).

[18] In addition to these elements, Indiana Code section 32-21-7-1(a) imposes a requirement that an adverse possessor "pay all taxes and special assessments that the adverse possessor reasonably believes in good faith to be due on the real property during the period the adverse possessor claims to have adversely possessed the real property." "Substantial compliance satisfies this statutory tax payment requirement 'where the adverse claimant has a reasonable and good faith belief that the claimant is paying the taxes during the period of adverse possession.'" *Celebration Worship Ctr.*, 35 N.E.3d at 254 (quoting *Fraley*, 829 N.E.2d at 493). "Once the elements of adverse possession are established, fee simple title to the disputed tract of land is conferred upon the possessor by operation of law, and title is extinguished in the original owner." *Id.* at 254 n.2. "Once title vests in a party at the conclusion of the ten-year possessory period, the title may not be lost, abandoned, or forfeited, even where the party pays rent to the titleholder, agrees to a survey to attempt to find the true boundary line, expresses satisfaction with a survey whose results are inconsistent with the property adversely possessed by him, or states that he does not claim the land and offers to buy it." *Fraley*, 829 N.E.2d at 487 (internal citations omitted).

[19]    In its order denying the Millikans' motion for summary judgment and granting summary judgment to the City, the trial court found that the Millikans did not satisfy Indiana Code section 32-21-7-1(a). *Appellant's App. Vol. II* at 13. Specifically, the trial court found that the Millikans failed to prove they substantially complied with the requirements of the statute, which required them to have a reasonable and good faith belief that they paid the special assessments due during the period of adverse possession. *Id*. The trial court found that the Millikans did not pay property taxes on the Disputed Property but that it did not appear that any were ever assessed because "title appears in the name of [Noblesville]," according to one of the City's exhibits.[3] *Id*. at 14. The trial court further found that, because they paid taxes and assessments on the south part of the railroad right of way, the Millikans should have known that they were not paying the taxes and assessments on Disputed Property and, therefore, did not act reasonably and in good faith when they did not receive a tax bill for the Disputed Property. *Id*.

[20]    The designated evidence showed that there were not any taxes or special assessments assessed on the Disputed Property until 2010. The Millikans began exercising control over the Disputed Property in 1982 and continued for approximately twenty-eight years before the drainage assessments that the City

---

[3] The exhibit relied on by the trial court only showed tax records from 2011-2016 and, therefore, only showed that title was in the name of Noblesville for that time period. *See Appellant's App. Vol. II* at 133.

argued, and the trial court found, were due on the Disputed Property. The Millikans presented designated evidence that there were no property taxes assessed on the Disputed Property while they possessed and maintained the land. *Id*. at 24, 49, 51. In November 1991, they filed the 1991 Affidavit, asserting title over the entire railroad right of way, including the Disputed Property, which the Recorder's Office stamped as "duly entered for taxation." *Id*. at 24, 27. The Millikans believed that this 1991 Affidavit put the taxation authorities on notice that they were taking responsibility for taxation of the Disputed Property. Although they were mistaken in their belief that they obtained possession of the Disputed Property pursuant to then Indiana Code section 8-4-35-5, contrary to the trial court's findings, the Millikans were not paying taxes on one property (the south right of way) and not another (the Disputed Property) during the period of adverse possession. The designated evidence showed that no taxes or assessments were due for the Disputed Property until after the period of adverse possession had passed.

[21] Under previous Indiana cases, adverse claimants have been found to have satisfied the taxation statute where they never paid taxes on the adversely possessed property because no taxes were ever assessed on the property, and this court reasoned that "only the taxes falling due on the property need be paid; where no taxes are assessed none need be paid." *Colley v. Carpenter*, 362 N.E.2d 163, 167 (Ind. Ct. App. 1977) (citing *Longabaugh v. Johnson* 321 N.E.2d 865, 868 (Ind. Ct. App. 1975)). In the present case, because no taxes or

assessments were assessed and due on the Disputed Property during the period of adverse possession, we conclude that the Millikans substantially complied with the statutory tax payment requirement because they had a reasonable and good faith belief that they were paying the taxes during the period of adverse possession. This is particularly true because there were no taxes or assessments assessed on the Disputed Property for a least twenty-eight years after the Millikans began asserting control and possession of the Disputed Property and for at least eighteen years after they filed their 1991 Affidavit. A party substantially complies with the statutory tax payment requirement "'where the adverse claimant has a reasonable and good faith belief that the claimant is paying the taxes during the period of adverse possession.'" *Celebration Worship Ctr.*, 35 N.E.3d at 254 (quoting *Fraley*, 829 N.E.2d at 493).

[22] "Once the elements of adverse possession are established, fee simple title to the disputed tract of land is conferred upon the possessor by operation of law, and title is extinguished in the original owner." *Id*. at 254 n.2. Once title vests in a party at the conclusion of the ten-year possessory period, the title may not be lost, abandoned, or forfeited. *Fraley*, 829 N.E.2d at 487. Therefore, for at least a ten-year period, beginning in 1982, the Millikans substantially complied with the taxation statute because they had a reasonable and good faith belief that they were paying the taxes during the period of adverse possession as no taxes were assessed on the Disputed Property during that period of time. We, thus, find that the trial court erred in granting summary judgment in favor of the City

and in denying the Millikans' motion for summary judgment. We reverse and remand to the trial court to enter summary judgment in favor of the Millikans.

[23] Reversed and remanded.

Pyle, J., and Tavitas, J., concur.