## MEMORANDUM DECISION

Pursuant to Ind. Appellate Rule 65(D), this Memorandum Decision shall not be regarded as precedent or cited before any court except for the purpose of establishing the defense of res judicata, collateral estoppel, or the law of the case.



ATTORNEYS FOR APPELLANTS

Lee C. Christie
Katherine A. Brown-Henry
Cline Farrell Christie & Lee, P.C.
Indianapolis, Indiana

ATTORNEY FOR APPELLEE

William W. Drummy
Wilkinson, Goeller, Modesitt,
Wilkinson & Drummy, LLP
Terre Haute, Indiana

# IN THE
# COURT OF APPEALS OF INDIANA

Andrew C. Smith and Heather Smith,

*Appellants-Defendants/Cross-Defendants,*

v.

Progressive Southeastern Insurance Co.,

*Appellee-Plaintiff/Counter-Defendant,*

and

Scottsdale Insurance Company,

*Appellee-Defendant/Counter-Defendant/Cross-Plaintiff,*

and

August 31, 2018

Court of Appeals Case No. 18A-PL-340

Appeal from the
Clay Superior Court

The Honorable
J. Blaine Akers, Judge

Trial Court Cause No.
11D01-1609-PL-580

The Estate of Don R. Skelton,
Rhonda Skelton, and James
Skelton,[1]

*Appellees-Defendants/Cross-Defendants.*

**Kirsch, Judge.**

This appeal arises out of a declaratory judgment action involving a commercial general liability insurance policy issued by Scottsdale Insurance Company ("Scottsdale"). The issue in the declaratory action that is relevant to the present appeal is whether the Scottsdale policy provided coverage for the claims of Andrew C. Smith and Heather Smith (together, "the Smiths"). The trial court entered an order granting summary judgment in favor of Scottsdale, finding that the Smiths' claims were not covered under the Scottsdale policy. The Smiths appeal the trial court's order, raising the following restated issues for our review:

    I.    Whether the trial court erred in granting summary judgment in favor of Scottsdale because the Smiths assert that Scottsdale did not carry its burden to prove that there

---

[1] Neither Progressive Southeastern Insurance Company nor the Estate of Don R. Skelton, Rhonda Skelton, and James Skelton has filed appellate briefs in this matter. However, pursuant to Indiana Appellate Rule 17(A), "[a] party of record in the trial court . . . shall be a party on appeal."

are no material issues of fact as to whether the Scottsdale policy provided coverage to the Smiths; and

II. Whether the Scottsdale policy is void as against public policy because the coverage under the policy is illusory.

We affirm.

## Facts and Procedural History

In March 2016, Andrew C. Smith ("Andrew") worked for Don R. Skelton ("Don") in Don's tree trimming business. Smith worked as a groundman, which is someone who "runs the ground" and does "everything from cutting trees to roping limbs to using the pull saw." *Appellants' App. Vol. 2* at 187. Andrew had worked for Don for about nine years. When Andrew performed work for Don, Don supplied all of the tools Andrew used; he also purchased a pair of steel-toed boots that Andrew wore for work and gave Andrew two "Skelton shirts." *Id.* at 96. Andrew worked "all kinds" of hours for Don, but typically worked about thirty hours per week, sometime more in the summer months. *Id.* at 54. Andrew was not paid a set hourly rate, but usually made around ten dollars an hour with payment being made in cash. Andrew was not paid for overtime, and Don did not do any income tax withholding and never gave Andrew a 1099 tax form. *Id.* at 56.

On March 21, 2016, Andrew was working for Don and was by himself on a property cutting down trees that had previously been marked in orange. *Id.* at 190. As he worked, Andrew began cutting a tree that had "rotted on the back

side." *Id.* at 192. There were utility poles in the area, and when Andrew cut the tree, it snapped and hit a utility pole ground wire, knocking the wire to the ground. *Id.* at 192-93. Andrew called Don and told him what happened. Andrew apologized and told Don that he "had messed up [and] had dropped a ground wire." *Id.* at 71. Andrew offered to "work off what it [would] cost to fix . . . the damages." *Id.* Although Andrew had never "dropped" a ground wire before, he knew from past experience that it cost around $800 to fix. *Id.* Don told Andrew to go home and that Don would meet him there, so they could go together to look at the damage. *Id.* at 71, 195.

[5] Andrew went home, and later Don arrived to pick up Andrew in Don's bucket truck, which had an attached sixty-five-foot boom with a bucket at the end of it that could hold two adult men. *Id.* at 196-97. Andrew had used the bucket truck a few times, but never to reach an overhead line, only to do tree work. *Id.* at 79-80. Don and Andrew returned to the property, and Don parked the bucket truck near the broken ground wire. At that time, Andrew dropped the outriggers on the truck to stabilize the truck and make it safe to go up in the bucket. As Andrew did that, Don attached bungee cords with duct tape to the two ends of the broken ground wire. *Id.* at 199, 201. Andrew was not aware of what Don planned to do with the bungee cords. *Id.* at 80. Andrew got inside the bucket, and Don handed him one end of the broken ground wire. Don then joined Andrew inside of the bucket, holding the other end of the ground wire. Andrew began raising the bucket into the air, and Don told him to stop the bucket at a certain point. *Id.* at 200-01. The end of the ground wire that

Andrew was holding started to pull away from the bungee cord, so Andrew bent over the bucket to try to grab the ground wire. *Id.* at 201. At that point, everything went black for Andrew, and he has no memory of what occurred. *Id.* Andrew sustained serious injuries that caused him to remain in the hospital for a month and then in a rehabilitation facility for another month. *Id.* at 205.[2]

[6] On September 27, 2016, Progressive Southeastern Insurance Co. ("Progressive")[3] filed a complaint for declaratory judgment, naming the Smiths, Scottsdale, and the Estate of Don R. Skelton, deceased, Rhonda Skelton, and James Skelton (together, "the Skelton Defendants") as defendants in the action. On January 6, 2017, Scottsdale filed its answer with a cross-claim for declaratory judgment against the Smiths and the Skelton Defendants and a counter-claim against Progressive. Scottsdale averred that it issued a commercial general liability policy ("the Policy") to Don and that certain exclusions in the policy precluded coverage for any damages or injuries to Andrew, as well as any claims for defense or indemnity arising out of those damages and injuries. *Id.* at 23-24.

[7] The Policy was issued by Scottsdale to Don with the policy number "CPS2239452" and the policy period of June 27, 2015, to June 27, 2016. *Id.* at 130. The Policy describes Don's business as including the following: "TREE

---

[2] Don was killed as a result of the incident.

[3] Progressive Southeastern Insurance Co. was Don's commercial auto insurer.

TRIMMING, PRUNING AND REMOVAL, EXCLUDING SNOW/ICE REMOVAL." *Id.* at 130. The Policy provides commercial general liability coverage for Don's business, and subject to the exclusions in the policy, the Policy provides coverage for "Bodily Injury and Property Damage Liability," "Personal and Advertising Injury Liability," and "Medical Payments." *Id.* at 133, 135, 140, 142.

[8] Under the Policy, "an insured" is defined as: "An individual, you and your spouse are insureds, but only with respect to the conduct of a business of which you are the sole owner." *Id.* at 143. Don is the named insured on the "Common Policy Declarations" of the Policy. *Id.* at 130. Section I of the Policy states that it provides coverage for "Coverage A -- Bodily Injury and Property Damage Liability": "We will pay those sums that the insured becomes legally obligated to pay as damages because of 'bodily injury' or 'property damage' to which this insurance applies." *Id.* at 135. "Bodily injury" is defined as "bodily injury, sickness or disease sustained by a person, including death resulting from any of these at any time." *Id.* at 147.

[9] The Policy contains several exclusions to its bodily injury coverage. The exclusion clauses at issue in the present case are the exclusions for "Workers' Compensation and Similar Laws," ("the Workers' Compensation Exclusion") "Aircraft, Auto, or Watercraft," ("the Auto Exclusion") and "Injury to Worker." *Id.* at 136, 138, 159. The Workers' Compensation Exclusion provides: "This insurance does not apply to . . . [a]ny obligation of the insured

under a workers' compensation, disability benefits or unemployment compensation law or any similar law." *Id*. at 136.

[10] The Auto Exclusion states in pertinent part:

> This insurance does not apply to:
>
> . . . .
>
> **g.  Aircraft, Auto Or Watercraft**
>
> "Bodily injury" or "property damage" arising out of the ownership, maintenance, use or entrustment to others of any aircraft, "auto" or watercraft owned or operated by or rented or loaned to any insured.  Use includes operation and "loading or unloading."
>
> This exclusion applies even if the claims against any insured allege negligence or other wrongdoing in the supervision, hiring, employment, training or monitoring of others by that insured, if the "occurrence" which caused the "bodily injury" or "property damage" involved the ownership, maintenance, use or entrustment to others of any aircraft, "auto" or watercraft that is owned or operated by or rented or loaned to any insured.

*Id*. at 138.  The Policy defines "Auto" as:

> a.  A land motor vehicle, trailer or semitrailer designed for travel on public roads, including any attached machinery or equipment; or

> b. Any other land vehicle that is subject to a compulsory or financial responsibility law or other motor vehicle insurance law where it is licensed or principally garaged.
>
> However, "auto" does not include "mobile equipment."

*Id.* at 147. The definition of "mobile equipment" states that "self-propelled vehicles with the following types of permanently attached equipment are not 'mobile equipment' but will be considered 'autos': . . . [c]herry pickers and similar devices mounted on automobile or truck chassis and used to raise or lower workers." *Id.* at 149.

[11] The Injury to Worker Exclusion is an endorsement to the Policy that modifies and replaces the exclusion found at paragraph "**e. Employer's Liability**." *Id.* at 136, 159. The Injury to Worker Exclusion provides that the insurance does not apply to:

> "Bodily injury" to:
>
> (1) An "employee" of the insured arising out of and in the course of:
>
> (a) Employment by the insured; or
>
> (b) Performing duties related to the conduct of the insured's business; or
>
> (2) The spouse, child, parent, brother or sister of that "employee" as a consequence of Paragraph (1) above.

This exclusion applies:

(1) Whether the insured may be liable as an employer or in any other capacity; and

(2) To any obligation to share damages with or repay someone else who must pay damages because of the injury.

*Id*. at 159. The Injury to Worker Exclusion further states that:

This insurance does not apply to:

**1.** "Bodily injury" to:

a. An "employee," "leased worker," "temporary worker" or "volunteer worker" of any insured;

b. Any contractor, subcontractor, sub-subcontractor or anyone hired or retained by or for any Insured; or

c. Any employee or anyone directly or indirectly employed by such contractor, subcontractor or subsubcontractor or anyone for whose acts such contractor, subcontractor or sub-subcontractor may be liable

if such "bodily injury" arises out of and in the course of their employment or retention of such contractor, subcontractor or sub-subcontractor, regardless of whether or not it is caused in part by you.

*Id*.

[12] The Policy also provides coverage for medical payments in "Coverage C – Medical Payments," stating:

> a. We will pay medical expenses as described below for "bodily injury" caused by an accident:
>
> . . . .
>
> (3) Because of your operations; provided that:
>
> (a) The accident takes place in the "coverage territory" and during the policy period;
>
> (b) The expenses are incurred and reported to us within one year of the date of the accident; and
>
> (c) The injured person submits to examination, at our expense, by physicians of our choice as often as we reasonably require.
>
> b. We will make these payments regardless of fault.

*Id*. at 142. The Policy contains several exclusions to its medical payments coverage. The exclusions to the medical payments coverage include the Workers' Compensation Exclusion, the Auto Exclusion, and the Injury to Worker Exclusion. *Id*. at 136, 138, 159. Additionally, the Policy states, under the medical payments coverage, that:

> We will not pay for expenses for "bodily injury":
>
> **a. Any insured**

To any insured, except "volunteer workers."

**b. Hired Person**

To a person hired to do work for or on behalf of any insured or a tenant of any insured.

. . . .

**d. Workers' Compensation or Similar Laws**

To a person, whether or not an "employee" of any insured, if benefits for "bodily injury" are payable or must be provided under workers' compensation or disability benefits law or a similar law.

*Id*. at 142.

[13]   The "LOGGING AND LUMBERING OPERATIONS EXCLUSION" ("the Logging and Lumbering Exclusion") is an endorsement in the Policy that modifies the insurance provided under the COMMERICAL GENERAL LIABILITY COVERAGE PART and provides:

This insurance does not apply to "damages," "bodily injury," "property damage" or "personal and advertising injury" arising out of "logging and lumbering" operations performed by you or on your behalf.

With respect to this endorsement, the following Definition is added to the policy:

> "Logging and lumbering" means all operations associated with the felling of timber and production of lumber, including road building operations, the operation of saw or planning mills, operations incidental to any of these, and the ownership, maintenance or use of vehicles in connection with such operations.

*Id*. at 161.

On April 19, 2017, Scottsdale filed a motion for summary judgment, a brief in support of summary judgment, and designated evidence. A hearing was held on the motion for summary judgment. At the conclusion of the hearing, the trial court granted summary judgment in favor of Scottsdale, finding that coverage for the Smiths' claims are excluded under the Policy. The Smiths now appeal.

## Discussion and Decision

## I.    Summary Judgment

When reviewing the grant of summary judgment, our standard of review is the same as that of the trial court. *FLM, LLC v. Cincinnati Ins. Co.*, 973 N.E.2d 1167, 1173 (Ind. Ct. App. 2012) (citing *Wilcox Mfg. Grp., Inc. v. Mktg. Servs. of Ind., Inc.*, 832 N.E.2d 559, 562 (Ind. Ct. App. 2005)), *trans. denied*. We stand in the shoes of the trial court and apply a de novo standard of review. *Id*. (citing *Cox v. N. Ind. Pub. Serv. Co.*, 848 N.E.2d 690, 695 (Ind. Ct. App. 2006)). Our review of a summary judgment motion is limited to those materials designated to the trial court. Ind. Trial Rule 56(H); *Robson v. Tex. E. Corp.*, 833 N.E.2d

461, 466 (Ind. Ct. App. 2005), *trans. denied*. Summary judgment is appropriate only where the designated evidence shows there are no genuine issues of material fact and the moving party is entitled to judgment as a matter of law. T.R. 56(C). For summary judgment purposes, a fact is "material" if it bears on the ultimate resolution of relevant issues. *FLM*, 973 N.E.2d at 1173. We view the pleadings and designated materials in the light most favorable to the non-moving party. *Id*. Additionally, all facts and reasonable inferences from those facts are construed in favor of the non-moving party. *Id*. (citing *Troxel Equip. Co. v. Limberlost Bancshares*, 833 N.E.2d 36, 40 (Ind. Ct. App. 2005), *trans. denied*). The initial burden is on the moving party to demonstrate the absence of any genuine issue of fact as to a determinative issue, at which point the burden shifts to the non-movant to come forward with contrary evidence showing an issue for the trier of fact. *Hughley v. State*, 15 N.E.3d 1000, 1003 (Ind. 2014).

[16]     A trial court's grant of summary judgment is clothed with a presumption of validity, and the party who lost in the trial court has the burden of demonstrating that the grant of summary judgment was erroneous. *Henderson v. Reid Hosp. and Healthcare Servs.*, 17 N.E.3d 311, 315 (Ind. Ct. App. 2014), *trans. denied*. We will affirm upon any theory or basis supported by the designated materials. *Id*. When a trial court grants summary judgment, we carefully scrutinize that determination to ensure that a party was not improperly prevented from having his or her day in court. *Id*.

[17]     The interpretation of an insurance policy is primarily a question of law and, therefore, is a question particularly suited for summary judgment. *FLM*, 973

N.E.2d at 1174. Where there is an ambiguity, policies are to be construed strictly against the insurer. *Id*. An insurance contract is ambiguous when it is susceptible to more than one interpretation and reasonably intelligent persons would honestly differ as to its meaning. *Id*. An ambiguity does not exist, however, merely because the parties favor a different interpretation. *Id*. Where terms are unambiguous, they should be given their plain and ordinary meaning. *Id*. A court should construe the language of a contract so as not to render any words, phrases, or terms ineffective or meaningless. *Id.*

[18]   The Smiths argue that the trial court erred in granting summary judgment in favor of Scottsdale and finding that the Smiths' claims were not covered under the Policy. The Smiths contend that there is a genuine issue of material fact as to whether Andrew was in the course of his duties at the time of his injuries, which made it error to find that coverage for his injuries is barred by the Workers' Compensation Exclusion and the Injury to Worker Exclusion. The Smiths assert that, because Andrew's job duties did not include electrical work or repairing ground wires, he was not in the course of his employment when his injuries occurred, and the Workers' Compensation Exclusion and the Injury to Worker Exclusion do not apply. The Smiths also claim that there is a genuine issue of material fact as to whether Andrew's injuries were caused by the use of the bucket truck. The Smiths maintain that merely occupying the bucket at the

time of injury does not equate with the use of the bucket truck, and therefore, Scottsdale failed to prove that the Auto Exclusion applied.[4]

[19] The Policy is a commercial general liability policy, under which Scottsdale was required to pay "those sums that the insured becomes legally obligated to pay as damages because of 'bodily injury' . . . to which this insurance applies" and "medical expenses . . . for 'bodily injury' caused by an accident . . . because of [the insured's] operations." *Appellants' App. Vol. 2* at 135, 142. However, several exclusions exist that, if applicable, preclude coverage if applicable. The Injury to Worker Exclusion precludes coverage for bodily injury to an employee of the insured if the bodily injury arises out of and is in the course of the employee's employment. *Id*. at 159. The Workers' Compensation Exclusion precludes coverage for "[a]ny obligation of the insured under a workers' compensation, disability benefits or unemployment compensation law or any similar law." *Id*. at 136. Indiana's Workers' Compensation Act authorizes the payment of compensation to employees for "personal injury or death by

---

[4] In their Appellants' Brief, the Smiths argue that Scottsdale made additional designations of evidence in its Reply Brief in Support of Its Motion for Summary Judgment and at the summary judgment hearing and assert that these additional designations were not properly in front of the trial court and should not have been considered by the trial court. The Smiths did not raise this issue of untimely designated evidence to the trial court. It is well-settled that issues not raised before the trial court on a summary judgment motion cannot be argued for the first time on appeal and are therefore waived. *Morris v. BioSafe Engineering, Inc.*, 9 N.E.3d 195, 201 n.4 (Ind. Ct. App. 2014), *trans. denied*. Waiver notwithstanding, the additional designations at issue were parts of Andrew's deposition, and Progressive had previously filed Andrew's complete deposition as designated evidence. *Appellants' App. Vol. 2* at 45-112. "It is well settled that a party may rely on evidence designated by an opposing party." *N. Assurance Co. of Am. v. Thomson Inc.*, 996 N.E.2d 785, 794 (Ind. Ct. App. 2013) (citing *AutoXchange.com, Inc. v. Dreyer & Reinbold, Inc.,* 816 N.E.2d 40, 46 (Ind. Ct. App. 2004) ("Once evidence has been designated to the trial court by one party, that evidence is deemed designated and the opposing party need not designate the same evidence.")), *trans. denied*. We, therefore, conclude that Scottsdale's designations of additional pages of Andrew's deposition were properly in front of the trial court.

accident arising out of and in the course of the employment." Ind. Code § 22-3-2-2(a). Therefore, for the exclusions to be applicable, Andrew's injuries must have arisen out of and been in the course of his employment with Don.

[20] The designated evidence showed that Andrew was employed by Don in Don's tree trimming business and had been for about nine years. The Smiths' argument is that Andrew was not in the course of his employment when he was injured. "'An injury arises out of employment when a causal nexus exists between the injury sustained and the duties or services performed by the injured employee.'" *A Plus Home Health Care Inc. v. Miecznikowski*, 983 N.E.2d 140, 142 (Ind. Ct. App. 2012) (quoting *Milledge v. The Oaks,* 784 N.E.2d 926, 929 (Ind. 2003), *superseded on other grounds by* I.C. § 23-3-2-2 (2006)), *trans. denied*. "The 'nexus is established when a reasonably prudent person considers the injury to be born out of a risk incidental to the employment.'" *Id.* (quoting *Milledge*, 784 N.E.2d at 142).

[21] The designated evidence showed that, on the day of Andrew's injuries, Andrew was working for Don and was on a property cutting down trees that had previously been marked in orange. As he worked, Andrew began cutting a tree that had "rotted on the back side" and when Andrew cut the tree, it snapped and hit a utility pole ground wire, knocking the ground wire to the ground. *Appellants' App. Vol. 2* at 192-93. Andrew called Don and told him about the broken ground wire. Don told Andrew to go home and that Don would pick him up later, so they could go together to look at the damage. *Id*. at 71, 195.

Don came to pick him up in Don's bucket truck, and they returned to the property.

[22] When they arrived at the worksite, Don parked the bucket truck near the broken ground wire, Andrew dropped the outriggers on the truck to stabilize it, and Don attached bungee cords to the two ends of the broken ground wire. *Id*. at 199, 201. Andrew believed that they were "hooking them up there" and thought that Don called the light company and they were "just getting them out of the way for making it easier for them [the light company] to fix it." *Id*. at 80. After Andrew set up the outriggers and Don attached the bungee cords, Andrew got in the bucket, and Don handed him one side of the wire. Don grabbed the other side and got in the bucket with Andrew. After Don climbed into the bucket truck, Andrew raised the bucket up. He raised the bucket slowly, and Don kept telling him, "Come on, come on, a little more, a little more." *Id*. at 85-86, 200-01. Andrew's wire started to slip through the bungee cord, and he tried to bend over the bucket to grab it to keep it from slipping. Andrew reached over the bucket to touch the wire, and then everything went black. Andrew believed that his movement to grab the wire caused the bucket to move and caused Don to sway to get his balance and that Don touched a live wire while straightening up. *Id* at 87-88; 202-03.

[23] The designated evidence showed a causal nexus between the injury sustained and the duties or services performed by the injured employee. Evidence was presented that Andrew believed that he and Don were in the bucket to "hook [the wires] up there" to make it easier for the light company to fix. *Id*. at 80.

Andrew was not present at the worksite and in the bucket for any personal reason; he had gone back because Don, his employer, had picked him up to look at the ground wire that Andrew had broken while he was working earlier that day. Andrew did not have any personal reason to hold part of the broken ground wire, operate the bucket truck, or go into the bucket. Further, although Andrew did not have previous experience with repairing broken ground wires, the evidence showed that he was aware that broken ground wires occurred during this type of work and that Don had previously broken wires. *Id*. at 71-72. Andrew also stated that working around power lines and utility poles was "just another day at the office" and that he always treated wires as if they were live with electricity running through them. *Id*. at 66, 88. Therefore, a reasonably prudent person could consider Andrew's injury to be born out of a risk incidental to the employment, and a causal nexus between Andrew's injury and the duties or services performed by him existed. Andrew's injuries arose out of his employment with Don, and his injuries occurred in the course of his employment with Don. Thus, the Injury to Workers Exclusion, the Workers' Compensation Exclusion, and the Medical Payments Exclusion are applicable and preclude recovery for the Smiths.

[24] Additionally, the Auto Exclusion precludes coverage for bodily injury arising out of the ownership, maintenance, use or entrustment to others of any auto owned or operated by or rented or loaned to any insured. *Id*. Both Scottsdale and the Smiths agree that the bucket truck at issue meets the definition of an "auto" under the Policy. *Appellants' Br*. at 32; *Appellants' App. Vol. 2* at 120-21.

"Our Supreme Court has interpreted the phrase 'ownership, maintenance, and use' of a vehicle, in the context of an insurance policy, to mean 'being caused by use of' the vehicle." *Estate of Curtis by Brade v. GEICO Gen. Ins. Co.*, 71 N.E.3d 1157, 1160 (Ind. Ct. App. 2017) (quoting *Ind. Lumbermens Mut. Ins. Co. v. Statesmen Ins. Co.*, 260 Ind. 32, 34, 291 N.E.2d 897, 899 (1973)). "Therefore, an accident arises out of the ownership, maintenance, and use of a vehicle only if such ownership, use, or maintenance is the incident's 'efficient and predominating cause.'" *Id.* The question is whether there is an "active" relationship between the claimant and the vehicle. *Argonaut Ins. Co. v. Jones*, 953 N.E.2d 608, 619 (Ind. Ct. App. 2011), *trans. denied*.

[25] Here, the evidence was that Andrew was injured at a worksite where, earlier in the day, he had broken a ground wire. After breaking the wire, he notified Don, who told him that he would pick him up later that evening to return to the worksite. When they returned to the worksite, Don wrapped bungee cords around each side of the wire and handed one side to Andrew, while holding onto the other end. Both men got into the bucket, and Andrew raised it. While inside of the bucket and in the air, Andrew's end of the wire began to slip, and he reached over the side of the bucket to maintain his hold of the wire. Andrew believed his movement caused the bucket to move and caused Don to touch the live wire. Both Don and Andrew were inside the bucket and using the bucket truck when they were injured, and immediately before their injuries occurred, Andrew was operating the bucket by raising it. Don and Andrew were both inside the bucket holding the different sides of a broken ground wire when

Andrew reached over the edge of the bucket, and Don then touched a live wire, causing their injuries. Therefore, at the time that Andrew's injuries occurred, he and Don were using the bucket truck in their attempt to deal with the broken ground wire. Because the use of the bucket truck caused Andrew's injuries, the Auto Exclusion precludes recovery for the Smiths.

[26] We, therefore, conclude that the designated evidence showed that Andrew's injuries arose out of his employment with Don and his injuries occurred in the course of that employment, and coverage under the Policy was excluded under the Injury to Workers Exclusion, the Workers' Compensation Exclusion, and the Medical Payments Exclusion. Additionally, the evidence showed that Andrew's injuries arose out of the use an auto, namely the bucket truck, owned by Don, and coverage under the Policy was excluded under the Auto Exclusion. The trial court did not err in granting summary judgment in favor of Scottsdale.

## II. Policy Void

[27] Generally, an insurer has the right to limit its coverage of risks and its liability, and in so doing may impose exceptions, conditions, and exclusions upon its contractual obligations that are not inconsistent with public policy. *Balagtas v. Bishop*, 910 N.E.2d 789, 795 (Ind. Ct. App. 2009), *trans. denied*. "[C]ontracting parties may enter into any agreement they desire so long as it is not illegal or contrary to public policy." *Valparaiso Tech. Inst., Inc. v. Porter Cnty. Treasurer*, 676 N.E.2d 416, 420 (Ind. Ct. App. 1997). "Our courts have refused to enforce private agreements on public policy grounds in cases involving: (1) agreements

that contravene a statute; (2) agreements that clearly tend to injure the public in some way; or (3) agreements that are otherwise contrary to the declared public policy of Indiana." *Hemingway v. Scott*, 66 N.E.3d 998, 1002 (Ind. Ct. App. 2016).

[28] The Smiths argue that the Policy is void as against public policy and unenforceable because the Policy provides no coverage under any circumstances. The Smiths contend that this is because the Logging and Lumbering Exclusion contained in the Policy precludes any coverage because Don's entire business falls within the scope of the exclusion since the tree trimming business includes cutting down trees. The Smiths further assert that the Policy is useless because it excludes coverage from the use of the equipment attached onto Don's automobiles, for any type of worker injuries, and associated with the cutting down of trees, which is the main operation of Don's business and that all of these exclusions combine to exclude coverage for all foreseeable liabilities of Don's business.

[29] The Policy contains the Logging and Lumbering Exclusion, which provides:

> This insurance does not apply to "damages," "bodily injury," "property damage" or "personal and advertising injury" arising out of "logging and lumbering" operations performed by you or on your behalf.

> With respect to this endorsement, the following Definition is added to the policy:

> "Logging and lumbering" means all operations associated with the felling of timber and production of lumber, including road building operations, the operation of saw or planning mills, operations incidental to any of these, and the ownership, maintenance or use of vehicles in connection with such operations.

*Id*. at 161.

[30] The Policy is designed as a commercial general liability insurance policy, not a policy that provides coverage for employees or workers. Although the Smiths argue that the Logging and Lumbering Exclusion precludes any coverage because Don's business includes the cutting down of trees, we disagree. In the Policy, logging and lumbering is defined as "all operations associated with the felling of timber and production of lumber." *Id.* The plain language of the Logging and Lumbering Exclusion does not exclude coverage for tree trimming and removal.[5] The Smiths maintain that "logging and lumbering" is equivalent to "cutting down trees (i.e. the felling of timber)." *Appellants' Br.* at 35-36. However, this is not correct. A tree-trimming and tree removal business does not engage in the production of lumber or the felling of timber. Don did not fell trees to produce lumber. The Logging and Lumbering Exclusion is not applicable to Don's business and did not preclude coverage for his operations. Because coverage for injuries under the commercial general liability of Don's

---

[5] Although the previous attorney representing Scottsdale in Scottsdale's cross-claim for declaratory judgment, argued that the Logging and Lumbering Exclusion precluded coverage, this argument has not been repeated.

business is not precluded under the Policy, we conclude that the Policy is not void as against public policy.

[31] Affirmed.

Vaidik, C.J., and Riley, J., concur.